**KAWASAKI ZOSENSHO OF KOBE, JAPAN, v. COSULICH SOCIETA TRIESTINA DI NAVIGAZIONE OF TRIESTE, ITALY.**

**THE BALTIMORE MARU.**

**THE ANNA.**

(Circuit Court of Appeals, Fifth Circuit. February 27, 1926.)

No. 4665.

1. **Collision ⬅110—Subsequent strandings of ship, in attempt to return to shore and to anchor in channel, held proximate result of collision, so as to recover damages therefor.**

Subsequent strandings of ship after collision, in attempt to turn around in channel to return to shore and in attempt to anchor in channel until daylight, *held* proximate result of collision, so as to recover damages therefor.

2. **Collision ⬅18—Act complained of, having unbroken connection with injury, is "proximate cause."**

"Proximate cause" is dominant cause, and where there is an unbroken connection between the act complained of and the injury, it, and not an intervening act, is the proximate cause.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

3. **Collision ⬅130.**

Generally interest is allowed from date of collision on damages therefrom, except where inequitable.

**4. Collision ⚖═130—Interest should be calculated only from date of final decree, where claims of each ship against other had not been liquidated, but had been opposed in good faith.**

Where, after allowance of divided damages, claim of each ship against other had not been liquidated, but was seriously and in good faith insisted on and opposed, interest should be calculated only from date of final decree.

**5. Collision ⚖═129—Insurance premiums incurred by ship while in dry dock undergoing repairs are not proper charge on allowance of divided damages for collision.**

Insurance premiums incurred by ship while in dry dock undergoing repairs are not proper charge on allowance of divided damages for collision, as such insurance would not have inured to benefit of other ship.

Appeal from the District Court of the United States for the Southern District of Texas; J. C. Hutcheson, Judge.

Libel by the Cosulich Societa Triestina Di Navigazione of Trieste, Italy, owner of the steamship Anna, against the Kawasaki Zosensho of Kobe, Japan, owner of the steamship Baltimore Maru, consolidated with a libel by the respondent against the libelant. Decrees of dismissal were reversed (297 F. 182), and causes remanded for division of damages. From a decree awarding damages, both parties appeal. Reversed and remanded.

H. C. Hughes, of Galveston, Tex. (Lockhart, Hughes, Lockhart & Rayzor, of Galveston, Tex., and Hunt, Hill & Betts and Geo. C. Sprague, all of New York City, on the brief), for appellant.

Mart H. Royston, of Galveston, Tex., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. On a former appeal we sustained a finding of the district judge that a collision between the steamships Baltimore Maru and Anna was attributable to their joint negligence, and consequently held that the damages should be divided. 297 F. 182.

The proceedings subsequently taken consisted of a stipulation setting forth the items of expense incurred by each ship, and some additional testimony of the pilot of the Baltimore Maru relating to the maneuvers of that ship after the collision, and of another pilot to the effect that those maneuvers were proper under the circumstances. A decree was entered, awarding to the Anna all items of expense it claimed, with interest from the date of the collision, except one item for insurance premiums amounting to $6,773.35, which was incurred while that vessel was in dry dock undergoing repairs. The last-named item was rejected. The decree also allows recovery for damages sustained by the Baltimore Maru as a result of the collision itself, but rejects claims amounting to $19,447.88, for repairs made necessary by two successive strandings of that vessel following the collision.

The Baltimore Maru, as the result of the collision, was left in a fog athwart the channel, with her bow toward bell buoy No. 7. Her master, while she was lying in that position, ordered the pilot to return to Galveston, for the purpose of ascertaining and repairing any damage that had been done. The effort of the pilot to turn her around was interfered with by an outward bound vessel, to which by going astern he gave room to pass between his ship and the bell buoy. When the pilot attempted to go forward again, as soon as the way was clear and within a few minutes after the collision, the Baltimore Maru went aground on the south side of the channel, and remained there several hours, or until about 1:30 a. m., when, with the assistance of tugs, she was floated. By that time a southeast wind was blowing about 40 miles an hour, and the light on buoy No. 9 up the channel was out. The pilot thereupon decided to go out into the channel, where there was sufficient water, and anchor until daylight. He called upon the master to have soundings made, and to notify him when the ship was in six fathoms of water. He proceeded until he was notified that the soundings indicated that depth and anchored, but the ship went aground on the north side of the channel, where it remained for nine days.

The Baltimore Maru appeals, and contends that the court erred in refusing to allow damages which resulted from both the first and second strandings, and in allowing interest to the Anna from the date of the collision, instead of from the date of the decree. A cross-appeal is taken on behalf of the Anna, on the ground that the court erred in refusing to include in the damages awarded to her the amount of the premiums for insurance while she was in dry dock.

[1, 2] We are of opinion that the collision was the proximate cause of the subsequent strandings of the Baltimore Maru, and that the damages resulting therefrom should have been allowed. The law is plain enough that the proximate cause is the dominant cause, and that, where there is an unbroken connection between the act complained of and

the injury, it, and not an intervening act, is the proximate cause. The G. R. Booth, 19 S. Ct. 9, 171 U. S. 454, 43 L. Ed. 234; The McAllister, 258 F. 549, 169 C. C. A. 489. The only difficulty lies in applying this established rule of law to the facts of this case. If the pilot and those operating the Baltimore Maru after the collision acted as reasonably prudent persons would have acted under the circumstances then existing, it cannot well be argued that the collision was not the proximate cause of the first stranding. It is easy enough now to say that, if the ship had been taken out to sea, she could then have been turned around and brought back in safety. But there was room enough in the channel, which is from 800 to 1,000 feet wide, for a ship 405 feet long to turn half way around. It must be remembered that the Baltimore Maru was in a perilous situation, and that it was not known whether she would sink, or how badly damaged she was. She had to be turned one way or the other, because she was across the channel, and it was not apparent that it was more difficult to return to port than it was to go out to sea. It is not accurate to say that she was under control before the necessity arose to give way for another ship. If the collision was the proximate cause of the first stranding, as we think it was, then it cannot well be denied that it was also the proximate cause of the second stranding. Of necessity the pilot had to rely on others to take soundings, and the mere fact, if it be a fact, that the depth of water was inaccurately reported, was not an independent cause of the second stranding, but was an incident of the collision.

[3] The general rule is to allow interest from the date of the collision (The Manitoba, 7 S. Ct. 1158, 122 U. S. 97, 30 L. Ed. 1095), and is well established in this court. (Galveston Towing Co. v. Cuban S. S. Co., 195 F. 711, 115 C. C. A. 438; The El Monte, 252 F. 59, 164 C. C. A. 171; The Borgestad, Managua Nav. Co. v. Aktieselskabet Bargestad (C. C. A.) 7 F.[2d] 990). But we also recognize that the rule is subject to exceptions, and does not apply where it would be inequitable to enforce it. The Mary B. Curtis, 250 F. 9, 162 C. C. A. 181.

[4] The damages sustained by the Anna were not known until repairs were made at some time after the collision which is not definitely disclosed by the evidence, and the amount claimed on behalf of that ship is substantially greater than was awarded by the district judge. It has not been settled heretofore whether the greater part of the amount that is now sought to be recovered by the Baltimore Maru should be allowed. In short, the claim of each ship against the other has not been liquidated but has been seriously and in good faith insisted upon and opposed. We are of opinion that interest should be calculated from the date of the final decree hereafter to be entered.

[5] The item for insurance premiums paid by the Anna is urged as a proper charge, on the theory that the Baltimore Maru would have benefited by the amount of the insurance in the event the Anna had been destroyed by fire. That item was properly rejected, as such insurance would not have inured to the benefit of the Baltimore Maru. The City of Norwich, 6 S. Ct. 1150, 118 U. S. 468, 30 L. Ed. 134; Chicago, etc., R. R. Co. v. Pullman Car Co., 11 S. Ct. 490, 139 U. S. 79, 35 L. Ed. 97; The Tremont, 161 F. 1, 88 C. C. A. 304.

The decree is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.