## PACKAGE CLOSURE CORPORATION v. SEALRIGHT CO., Inc., et al.

### No. 273.

Circuit Court of Appeals, Second Circuit.

April 3, 1944.

Unger & Pollack, of New York City (William F. Unger, of New York City, of counsel), for appellant.

Sullivan & Cromwell and Henry R. Ashton, all of New York City, Hiscock, Cowie, Bruce, Lee & Mawhinney, of Syracuse, N. Y., and Joseph J. Brown, of Philadelphia, Pa., for appellees.

Edwards & Smith, of New York City (John F. Dailey, Jr., and Charles A. Ellis, both of New York City, of counsel), for defendant-appellee Daniel A. Mackin.

Before CHASE, CLARK, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

■ 1. Without doubt, plaintiff alleges conduct by defendants violative of the Sherman Act. But that is not enough upon which to ground an action under § 7, 15 U.S.C.A. § 15. The question is whether plaintiff's allegations sufficiently show that, "by reason of" that conduct, plaintiff was "injured" and thereby "sustained damages."

The gist of the prolix complaint, and in fact the only ground of recovery by plaintiff under the Sherman Act, consists of allegations that, in aid of a conspiracy the purpose of which was to destroy plaintiff as a business rival, defendants, acting in concert, fixed a combination price at which they sold hoods and caps "so low as not to permit a return to them covering the reasonable expense of production and sale and a reasonable profit thereon"; that this price "was not based upon any economies in the cost of production or distribution effected through the sales of caps and hoods in combination"; that plaintiff could not compete in those circumstances; and that, as a consequence, it suffered damages. Defendants contend that these allegations disclose no causal relation between their acts and plaintiff's loss since plaintiff itself alleges its lack of "the requisite financial resources" to manufacture caps and cappers; that defendants' reduction in prices constituted no actionable wrong; and that, in any event, plaintiff's allegations of damages are insufficient. We cannot agree.

In Story Parchment Co. v. Paterson Co., 282 U.S. 555, 561, 51 S.Ct. 248, 250, 75 L. Ed. 544, a treble damage suit under the Sherman Act, the defendants, combining and conspiring in order to injure the plaintiff, sold their goods "below the point of fair profit, and finally below the cost of production." The Circuit Court of Appeals had reversed a judgment for plaintiff because it held that there was no basis for a reasonable inference that prices in excess of those actually realized would have prevailed if there had been no combination, and because the plaintiff was without capital to meet the situation confronting it even if there had been unrestrained competition, plaintiff's failure (so the court concluded) being inevitable either from lack of capital or inefficient management. 1 Cir., 37 F.2d 537. The Supreme Court reversed, saying: (282 U.S. pages 561, 562, 566, 567, 51 S.Ct. page 250, 75 L.Ed. 544); "There was evidence from which the jury reasonably could have found that, in pursuance of the conspiracy, respondents sold their goods below the point of fair profit, and finally below the cost of production; that petitioner had an efficient plant and sales organization, and was producing a quality of paper superior to that produced by either of the three companies; and that current prices, shown in detail, were higher during a period antedating the unlawful combination and price cutting in pursuance of it than afterward. It does not necessarily follow, of course, that these higher prices would have continued except for the conspiracy, but it is fair to say that the natural and probable effect of the combination and price cutting would be to destroy normal prices; and there was evidence of the prices received by petitioner before the cut prices were put into operation, and those received after, showing actual and substantial reductions, and evidence from which the probable amount of the loss could be approximated. The trial court fairly instructed the jury in substance that, if they were satisfied that the old prices were reasonable, and that they would not have changed by reason of any economic condition, but would have been maintained except for the unlawful acts of the respondents, the jury might consider as an element of damages the difference between the prices ac-

tually received and what would have been received but for the unlawful conspiracy. Upon a consideration of the evidence, we are of opinion that it was open to the jury to find that the price cutting and the resulting lower prices were directly attributable to the unlawful combination; and that the assumption indulged by the court below, that respondents' acts would have been the same if they had been acting independently of one another, with the same resulting curtailment of prices, must be rejected as unsound. * * * Disposing of the second item of damages, the court below, after referring to evidence tending to show that petitioner was not in a thriving financial condition, said that petitioner was without capital to meet the situation which it faced, even if there had been no conspiracy and there had been open competition; and that its failure was inevitable either from lack of capital or inefficient management or both. The court therefore concluded that petitioner had not sustained the burden of proving that the depreciation in value of its plant was due in any measurable degree to any violation of the Sherman Act by the respondents. But this conclusion rested upon inferences from facts within the exclusive province of the jury, and which could not be drawn by the court contrary to the verdict of the jury without usurping the functions of that fact finding body. Whether the unlawful acts of respondents or conditions apart from them constituted the proximate cause of the depreciation in value was a question, upon the evidence in this record, for the jury, 'to be determined as a fact, in view of the circumstances of fact attending it.' Milwaukee & St. Paul Ry. Co. v. Kellogg, 94 U.S. 469, 474, 24 L.Ed. 256."

That decision, we think, compels reversal here. True, here the plaintiff does not go so far as to allege sales "finally below the cost of production." But that difference is not sufficient to distinguish this case from Story Parchment.[2] Plaintiff's allegations, if proved and unexplained, will show a conspiracy to drive plaintiff out of business by forbidden concerted action in fixing a price which had no reasonable economic foundation and the purpose of which was to injure plaintiff.

Of course, if, without concert, the defendants had severally sold at a price injurious to plaintiff, their conduct would not have been actionable, for, ordinarily, one engaged in actual competition, may sell his products at such prices as he chooses regardless of the consequences to his competitors. Indeed, keen rivalry in the essence of that competition which the common law fosters and which the Sherman Act is designed to promote. Because of the assumed value of competition—to consumers and also as a stimulant of enterprising characteristics, regarded as desirable, in the competitors themselves—the common law recognizes a privilege (which the Sherman Act underscores) to do acts, when engaged in competition, resulting in financial loss to others, although, in the absence of a competitive purpose, those same acts would give rise to legal liability. As Mr. Justice Holmes said, "A man has a right to set up a shop in a small village which can support but one of the kind, although he expects and intends to ruin a deserving widow who is established there already," this privilege resting "on the economic postulate that free competition is worth more to society than it costs."[3] But that privilege, founded on the existence of a bona fide competitive purpose, vanishes at common law when the purpose is not competition in good faith.[3a] "Imposed legal duties are usually a compromise between conflicting interests, the aggressor being privileged to invade the

---

[2] There plaintiff's complaint (as distinguished from the evidence at the subsequent trial) merely alleged that defendants "reduced prices * * * below a price which would yield a return to them * * * covering the reasonable cost of producing and selling vegetable parchment and a reasonable profit thereon * * *" As the case did not come before the Supreme Court on the pleadings, we do not regard the decision as explicitly and literally matching the case here. But the additional facts there proved on the trial are not, we think, of significance.

[3] Holmes, Privilege, Malice and Intent, 8 Harv.L.Rev. (1894) 1, 3; Holmes, Collected Legal Papers (1920) 117, 121; Vegelahn v. Guntner, 1896, 167 Mass. 92, 44 N.E. 1079, 1080, 35 L.R.A. 722, 57 Am.St.Rep. 443. See Restatement of Torts, § 708; Eastern Wine Corp. v. Winslow-Warren, Ltd., 2 Cir., 137 F.2d 955, 958.

[3a] Restatement of Torts, § 709; Tuttle v. Buck, 107 Minn. 145, 119 N.W. 946, 22 L.R.A.,N.S., 599, 131 Am.St.Rep. 446, 16 Ann.Cas. 807; Eastern Wine Corp. v. Winslow-Warren, Ltd., supra.

victim's interest to protect his own, so far as the law recognizes it. Hence, when he is not actuated by the desire to protect a recognized interest, the basis for his excuse disappears."[4] Much the same policy is embodied in § 7 of the Sherman Act. Accordingly, when persons aim not to compete but to eliminate competition, when, with that intent, they combine to fix prices so as to destroy a rival, and when their conduct has that effect, the injured rival may recover three times his resultant damages. It is defendants' price-fixing conspiracy for the illegal purpose and with the consequence alleged by plaintiff which gives plaintiff here a good claim under the Act.

█ The lower court did not reach its decision by distinguishing the instant case from the Story Parchment case,[5] but, in its opinion, said that in such a suit the plaintiff's allegations that defendants' violation of the Sherman Act was "the proximate cause" of the damages to the plaintiff "are jurisdictional," and that, "for that reason, legal conclusions are insufficient and facts must be pleaded with definiteness and particularity." Holding that plaintiff's allegations in that respect were "legal conclusions," it therefore decided that the complaint must be dismissed. In other words, it held that "jurisdictional" facts must be alleged with unusual particularity. We cannot agree.

There is no doubt that, as federal jurisdiction in an action for treble damages is founded on the facts that the defendant violated the Act and that by reason of that violation the plaintiff has sustained damages, such facts are "jurisdictional." But so, too, is the existence of a claim for more than $3,000 in a suit based upon diversity of citizenship, or the plaintiff's ownership of a patent in a suit for patent infringement; yet such facts in such suits need not (especially under the new Rules) be alleged with any unusual "definiteness and particularity." It is urged by defendants that a stricter requirement as to a plaintiff's pleading in treble damage actions is necessary because of the expense often involved in such litigation.[6] But in that respect such actions are not unique, for huge expense is involved, too, in many a patent infringement suit and in many a suit where jurisdiction rests on diversity of citizenship. To impose peculiarly stiff requirements in treble damage suits will be to frustate the Congressional intent. As Judge Lurton said some forty years ago: "Congress evidently foresaw the wholesome ·effect of pecuniary responsibility for injuries resulting from such forbidden combinations and the courts should not devitalize the remedy by strained interpretations calculated to encourage disregard of the law."[7]

The Supreme Court, at least as early as 1931, manifested no hostility to treble damage suits under the Sherman Act (Story Parchment Co. v. Paterson Co., supra) and we observe no signs that in the intervening years it has become less friendly either to direct enforcement[8] or to indirect enforcement of that Act.[9] We see no reason whatever to believe that the Supreme Court intended its liberal rules governing pleadings[10] to be inapplicable to a suit for treble damages. See C. E. Stevens Co. v. Foster & Kleiser, 311 U.S. 255, 260, 261, 61 S.Ct. 210, 85 L.Ed. 173.[11] We conclude that plaintiff has made sufficient alle-

---

[4] N. L. R. B. v. Columbia Products Corp., 2 Cir., 1944, 141 F.2d 687; cf. Ingo v. Koch, 2 Cir., 127 F.2d 667, 672, and notes 7, 8 and 9.

[5] Indeed, the court did not mention that case but leaned heavily on the earlier case of Keogh v. C. & N. W. Ry. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183.

[6] That suggestion is made in Arthur v. Kraft-Phenix Cheese Corp., D.C., 26 F. Supp. 824, 830.

[7] City of Atlanta v. Chattanooga Foundry & Pipeworks, 6 Cir., 127 F. 23, 27, 64 L.R.A. 721, affirmed sub nom. Chattanooga Foundry v. Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241; see Roseland v. Phister Mfg. Co., 7 Cir., 125 F.2d 417, 420, 139 A.L.R. 1013.

[8] See, e. g., United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129.

[9] See, e. g., Sola Elec. Co. v. Jefferson Elec. Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165; Morton Salt Co. v. Suppiger, 314 U.S. 488, 492, 62 S.Ct. 402, 86 L.Ed. 363; B. B. Chemical Co. v. Ellis, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367.

[10] See, e. g., Leimer v. State Mut. Life Assur. Co., 8 Cir., 108 F.2d 302, 305, 306; Sparks v. England, 8 Cir., 113 F.2d 579, 581, 582; Musteen v. Johnson, 8 Cir., 133 F.2d 106, 108; Maty v. Grasselli, Inc., 303 U.S. 197, 200, 201, 58 S.Ct. 507, 82 L.Ed. 745; Clark, Simplified Pleading, 2 F.R.D. 456.

[11] Cf. Louisiana Farmers' Protective

gations of a causal relation between the violation of the Act and plaintiff's injury[12] to entitle it to go to a jury. If the defendants, before trial, desire more detailed information from plaintiff, they can seek it by interrogatories, deposition or discovery.[13]

Those same comments apply to plaintiff's allegation of its damages. The complaint sufficiently alleges plaintiff's loss of its investment in its plant; and there is no insufficiency in the allegations as to loss of prospective profits. As the Supreme Court observed in Story Parchment, supra, when a wrongdoer is alone responsible for creating a condition in which damages cannot be measured with exactness and precision, he cannot complain. The court said: "Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise."

That doctrine finds its application in many differing contexts.[14] Often, a failure to apply that doctrine would mean that the more grievous the wrong done to the plaintiff by the defendant, the less likelihood there would be of a recovery. In the Story Parchment case the court (282 U.S. at page 565, 51 S.Ct. at page 251, 75 L.Ed. 544) quoted with approval from Straus v. Victor Talking Machine Co., 2 Cir., 297 F. 791, 802, to the effect that "the constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery."[15]

2. The court below—citing Shaw's, Inc. v. Wilson-Jones Co., 3 Cir., 105 F.2d 331 and Lipson v. Socony-Vacuum Corp., 1 Cir., 87 F.2d 265—held that the complaint alleged no violation of § 2 of the Clayton Act as amended, 15 U.S.C. A. § 13,[16] because it showed "no discrimination between different purchasers or

---

Union Co. v. Great A. & P. Tea Co., 8 Cir., 131 F.2d 419, 422, 423.

[12] The allegations concerning the individual defendants including appellee, Macklin, are sufficient.

[13] They can also seek it under Rule 12 (e) Rules of Civil Procedure, 28 U.S.C. A. following section 723c; but see 1 Moore, Federal Practice, 1942 Supplement, 634–650, for a searching criticism of the misuse of that Rule.

See, for instance, cases of confusion of goods such as Great Southern Gas & Oil Co. v. Logan Natl. Gas & Fuel Co., 6 Cir., 155 F. 114, 115, certiorari denied 207 U.S. 590, 28 S.Ct. 256, 52 L.Ed. 354. Compare the heavy burden of proof put on a ship in a collision case when it has violated a regulation made pursuant to statute; see The Pennsylvania, 19 Wall. 125, 136, 137, 22 L.Ed. 148, where the court said: "Such a rule is necessary to enforce * * * the mandate of the statute. * * * Who can say the proximity of the vessels would not have been discovered sooner if the bark had obeyed the navy regulation? If it be said this is speculation, it may be admitted, but it is speculation rendered necessary by [the] fault of the bark." Cf. F. W. Woolworth v. N. L. R. B., 2 Cir., 121 F.2d 658, 663.

[15] See, also, Eastman Kodak Co. v. Southern Photo Co., 273 U.S. 359, 378, 47 S.Ct. 400, 71 L.Ed. 684; Palmer v. Connecticut Ry. Co., 311 U.S. 544, 559, 61 S.Ct. 379, 85 L.Ed. 336; Meeker v. Lehigh Valley R. Co., 2 Cir., 183 F. 548, 551, 552.

[16] It reads in part as follows: "It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimina-

that any purchases took place," and no "discrimination between purchasers of commodities of like grade and quality." Judge CHASE and Judge CLARK agree with that conclusion, on the ground that a discount on a combination sale is not a forbidden discrimination and that, in any event, no actual discriminatory sales are alleged.

On that point, I differ with my colleagues for the following reasons: The complaint does, I think, allege that there were sales of caps to those who purchased them in combination with hoods at prices which discriminated against those who purchased caps only. In both instances, the same product, caps, were actually sold. The facts therefore distinguish this case from Shaw's, Inc. v. Wilson-Jones Co., supra, where the defendant refused to quote a price to plaintiff while quoting a price to plaintiff's competitor; there was no allegation of actual sales, and accordingly the court held there was no discrimination in price "between different purchasers." [105 F.2d 333.] In Lipson v. Socony Vacuum Corp., 1 Cir., 87 F.2d 265, the defendant made a differentiation between sales of gasoline in tank cars and sales in tank trucks or tank wagons; there the differentiation was based on a difference in the quantity of the product sold. Here the discrimination has no similar foundation. Since the defendants granted the so-called "discount" in order substantially to lessen competition, or to create a monopoly, and with that effect, I think they were guilty of a statutory violation by reason of which plaintiff was injured and sustained damages; for the statute covers a prevention or destruction of competition "with any person who * * * grants * * * such discrimination." It is not necessary that the plaintiff show that it was a purchaser against whom defendants discriminated.[17] I think the issue should go to a jury.

Reversed and remanded as to first cause of action; affirmed as to second and third causes.

tion, or with customers of either of them: Provided, That nothing contained in sections 12, 13, 14–21, 22–27 of this title shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered * * * And provided further, That nothing contained in sections 12, 13, 14–21, 22–27 of this title shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade: And provided further, That nothing contained in sections 12, 13, 14–21, 22–27 of this title shall prevent price changes from time to time where in response to changing conditions affecting the market for or the marketability of the goods concerned, such as but not limited to actual or imminent deterioration of perishable goods, obsolescence of seasonal goods, distress sales under court process, or sales in good faith in discontinuance of business in the goods concerned. * * * It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid."

[17] Midland Oil Co. v. Sinclair Refining Co., D.C., 41 F.Supp. 436, 438.