SINCLAIR REFINING CO. v. THE AMERICA SUN et al.

THE PATRICK J. HURLEY.

No. 184, Docket 21922.

United States Court of Appeals Second Circuit.

Argued Feb. 16, 1951.

Decided April 13, 1951.

Burlingham, Veeder, Clark & Hupper, New York City (Stanley R. Wright, New York City, of counsel), for appellant.

Mendes & Mount, New York City (Wilbur H. Hecht, Henry W. Dieck, New York City, of counsel), for appellees.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The appellant is a wholly-owned subsidiary of the Sinclair Oil Corporation and is engaged in that part of the over-all business of the corporation which consists of the purchase and refining of petroleum and the transportation and sale of it and its products. On March 12, 1942, the appellant owned and operated in its business the tanker Patrick J. Hurley, which for some time had been and then was engaged in transporting crude oil from Gulf ports to the refinery of the appellant at Marcus Hook, Penna. On that day, when on a return voyage to the Gulf in ballast to obtain another load of oil, she was in collision with the appellee's tanker America Sun and both vessels were so damaged that they were laid up for repairs. After suit was brought by the appellant, it was agreed that both vessels were at fault and an interlocutory decree was entered upon stipulation providing that the appellant, whose vessel sustained the most damage, should recover half the excess of that damage over that sustained by the appellee's vessel.

The cause was then referred to a special master before whom the principal bone of contention was whether damages were recoverable for detention while repairs were made. That and a dispute as to insurance premiums and interest made up the entire controversy before the master, the other items of damage as to both vessels having been disposed of by agreement. It was further agreed that if the appellant may recover demurrage the appellee may offset similar demurrage, its vessel having been laid up for repairs for a shorter period.

Considerable delay has occurred since the original suit was brought and that has been largely due to the fact that the special master was taken ill after he had concluded the taking of evidence, and subsequently died before he had filed a report. A successor was appointed who filed a report. This report allowed a substantial recovery for demurrage and for insurance premiums but denied interest. The appellant excepted to the failure to allow interest and the appellee to the allowance for demurrage and insurance costs. The district court

overruled the exception as to interest but sustained those as to the demurrage and insurance. At the same time there was a remand to the master for supplemental report "on libellant's alternative claim for detention damages based upon interest on the capital investment of the Patrick J. Hurley and depreciation during her layup for collision repairs." A supplemental report was filed but no such damages were allowed. The libellant had also moved for a remand to enable it "to introduce further proofs to said Special Commissioner as to tank car deliveries to the Marcus Hook refinery and as to the cost thereof" but this was denied.

The pertinent facts, so far as shown, are undisputed. During the entire period of detention for repairs, which the parties agree for the purposes of this case to have been thirty-four days, the appellant needed the full-time use of the "Hurley" in its business and but for the accident would have so used the ship continuously. It could not charter a substitute for then the demand for such ships was so great that none was procurable. The appellant's refinery at Marcus Hook could have processed all the oil the "Hurley" would, but for the detention, have brought to it, and the demand for its products then was in excess of its ability to produce. The appellant had ample crude oil available at Gulf ports for cargo for the "Hurley," having large storage facilities at Houston, Texas, alone and a refinery there which it operated.

It was shown that the "Hurley" was used exclusively to carry its owner's oil as above stated and that upon the voyage just preceding the return trip on which the collision occurred it had been operated at a profit of $2,040 a day. This was computed by crediting the ship with fifty-five cents for each barrel of oil she carried to Marcus Hook, that being the rate then, and during the time here involved, in effect by virtue of the government's General Order No. 3 of February 10, 1942. From this was deducted the costs of operation which included the prorated cost of the insurance carried on the ship. The demurrage allowed by the master was at the above amount per day for thirty-four days plus the prorated

cost of the insurance after giving effect to a reduction in premiums occasioned by the lessened risk while the vessel was laid up.

Where, as here, demurrage is claimed for a ship used exclusively to transport cargo used in the business of the shipowner, the damage may be shown by the cost of a substitute or by proving the loss to the business of the shipowner by being deprived of the use of the ship in that business. The Glendola, 2 Cir., 47 F.2d 206, 208. As no substitute vessel was procurable or procured, the loss is to be measured by the extra cost, if any, of transporting, processing, and selling the petroleum which the "Hurley," but for the detention, would have transported to Marcus Hook, provided that oil was processed either at Marcus Hook or elsewhere and sold; or, if the detention prevented it from being processed and sold, by whatever method will fairly reflect the actual loss. Whatever the method employed, it should be one that is reasonably adapted to the circumstances of each case so that there will, on the one hand, be no failure to award damages suffered and, on the other, no unreasonable award based upon some theoretical concept of loss. Brooklyn Eastern Dist. Terminal v. United States, 287 U.S. 170, 53 S.Ct. 103, 77 L.Ed. 240.

In this instance, the master computed demurrage as though the loss of the use of the "Hurley" had been compensated for by a substitute ship carrying at the rate fixed by government order. That expense was not, however incurred and, so recognizing, the judge correctly disallowed a recovery on such a basis. Brooklyn Eastern Dist. Terminal v. United States, supra. But the libellant, who had tried the case on the theory, shared by the master, that such damages were recoverable, then sought leave to show whether, and how, substitute carriage of petroleum was made to Marcus Hook. We think that under the circumstances it was an abuse of discretion to deny that. Clearly had the appellant employed a substitute ship or ships to transport to Marcus Hook what the "Hurley" would have carried there but for her detention, it could have recovered the extra cost of that service. We see no

reason why it could not recover that extra cost if the substitute carriage was by other reasonable means, such as pipe line or tank car.

█ The Marine Superintendent of the appellant testified that the crude oil which the "Hurley" was prevented from carrying might have been processed at the appellant's refinery at Houston, but he did not know that it was and there was no finding about it. The remand requested and denied included the usual general prayer for other relief and the reference to be made should permit the appellant to show, if it can, that all or part of the crude oil which the "Hurley" would have carried to Marcus Hook, but for her detention, was processed at Houston at a consequent financial disadvantage to the appellant. That, if proved, would be a part of the general detriment to the appellant's business and recoverable as detention damages. The Glendola, supra; Brooklyn Eastern Dist. Terminal v. United States, supra.

█ The libellant did on the remand attempt to establish an alternative basis for demurrage measured by interest on the invested capital while the "Hurley" was held out of service by the need for repairs. Such a basis for the allowance of detention damages was suggested in Brooklyn Eastern Dist. Terminal v. United States, supra, and reference was made to instances of such an award by English courts for the detention of publicly owned vessels. But the question was left open. When this appellant tried to recover such damages they were denied and that denial is one of the issues here presented. Very likely our decision will make that issue a moot one in this case for it is only an alternative ground of recovery at most, but nevertheless, if available, the appellant would have the right to pursue it and so it must be dealt with now. There is, indeed, some support for the theory in addition to the suggestion above mentioned. In Great Lakes Towing Company v. Kelley Island L. & T. Co., 6 Cir., 176 F. 492, the owner of a damaged scow, whose work had apparently been done during its detention by other vessels of the owner, was allowed interest on the value of the detained vessel. The libellant, not

the libelees, raised the point that loss of profits should have been allowed but the court, remarking merely that the value of the services of its substitute vessels had not been clearly shown, saw "no fair ground for complaint by the libellant." On the other hand, it is the rule in this country, at least in respect to demurrage recoverable on commercial vessels, that recovery is limited to such loss as is shown to have been suffered because of the deprivation of the profitable use of the vessel. The Conqueror, 166 U.S. 110, 17 S.Ct. 510, 41 L.Ed. 937; Navigazione Libera Triestina, S. A. v. Newton Creek Towing Co., 2 Cir., 98 F.2d 694, 699. If the appellant is able upon remand to show a loss caused by its inability to use the vessel in its business, recovery should be measured by that loss. Whether interest upon the capital invested may serve as an appropriate measure of damages when actual loss is established and a more accurate measure of it is unavailable may await decision until such a case is presented.

█ The question as to the disallowance by the court as recoverable damages of the premiums paid for insurance on the "Hurley" during the detention cannot foreseeably recur on the remand. They were, however, correctly disallowed. The Baltimore Maru, 5 Cir., 11 F.2d 836; The Tremont, 9 Cir., 161 F. 1.

Decree reversed and cause remanded for further proceedings in accordance with this opinion.

CLARK, Circuit Judge (concurring in part and dissenting in part).

I agree that the case should be returned for the award of damages; the showing of direct injury by loss of use was too specific to justify its ignoring or to cause fear lest a windfall be granted appellant. But I should prefer to accept the careful, reasoned conclusions of the learned and experienced master, who appears to have applied a reasonable yardstick in determining the amount of loss. The demanding and profitable market was in the East, and the profit on carriage to this market by sea over that by land was obviously the difference between the expense by rail and the

substantially less rates by oil tanker. The rail rate was fixed during all periods here involved, and the only question was to fix the cost of transportation by tanker. This the master did by taking the reasonable costs of the last prior, and just concluded, trip by this tanker, checked also by the testimony of an experienced expert and by the government allowances made when this vessel was taken over upon its recommissioning. That no such transportation was actually had here seems no answer; it was prevented by the collision, and reasonable, even if not mathematically provable, rates of damage are all that can properly be required. Matarese v. Moore-McCormack Lines, 2 Cir., 158 F.2d 631, 637, 170 A.L.R. 440; Package Closure Corp. v. Sealright Co., 2 Cir., 141 F.2d 972, 979; Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544.

The only question would appear to be a theoretical one under the circumstances, namely, whether there should be any deduction for salvage if the oil not sent to Marcus Hook was actually refined and sold at Houston. Since the parties did not bring this issue up, it may be concluded that there was none, particularly as there would seem deductible at most not an amount received, but a net profit realized. And since this issue would be one merely of mitigation of damage, it would seem that it must be raised as a defense by appellee. Furthermore appellant was prepared, but not permitted, to show that the oil was actually transported by rail to Marcus Hook. The recommendation of the master seems therefore a fair basis for the entry of judgment at once.

I sympathize with Judge CHASE'S desire to avoid an allowance based upon fictitious values. But, in limiting recovery to costs based only upon an actual transportation, I think he is going beyond what is reasonable under the circumstances, if not beyond what is possible of proof. In fact, the yardsticks he suggests seem to have a comparable uncertainty—as would any under the circumstances. For one at least of the figures used in making the subtraction to get the answer must always

be a "proven," *i.e.*, an assumed, one which is not based on an actual happening to the oil in question.

As to the insurance premiums, of course they should not be added in twice or duplicated, as perhaps they were before, though this is not made wholly clear. But if the matter does come up on the re-reference, then it seems clear that any part of the premiums charged either directly or as apportioned overhead expenses to this vessel are properly included in loss of the ship's use. I add that, were there no better method of computing loss available, then I should regard the alternative basis measured by interest on invested capital as quite a proper one to employ.