431 F.2d 391
 CONTINENTAL OIL COMPANY, Atlantic Richfield Company, Getty Oil Company, and Cities Service Oil Company, Libelants-Appellants, Cross-Appellees,
v.
SS ELECTRA, Her Engines, Tackle, Apparel, etc., and RIO PALMEA, CIA, NAV., S. A. Her Engines, Respondents-Appellees, Cross-Appellants.
 No. 28751.
 United States Court of Appeals, Fifth Circuit.
 August 31, 1970.
 
 Joseph Newton, Sweeney J. Doehring, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for appellants.
 George W. Renaudin, Royston, Rayzor & Cook, Houston, Tex., for appellees.
 Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.
 GODBOLD, Circuit Judge:
 
 
 1
 Appellants are four oil companies which owned an offshore drilling platform in the Gulf of Mexico, with which, on April 8, 1964, the appellee S.S. Electra collided. Several wells had been drilled from the platform, two of which were in production. There was no damage to the wells and no loss of oil, but the platform was so badly wrecked that production was halted.
 
 
 2
 Appellants filed this libel in rem. An agreement was reached under which appellees agreed to pay 90% of the provable damages resulting from the collision. The agreement was carried out as to physical damage to the platform, but the parties were unable to agree on damages for suspension of production from the wells. By agreement that issue was submitted to a commissioner.
 
 
 3
 Reconstruction of the platform had been delayed, and a hurricane had demolished it in October, 1964. The parties stipulated that if reconstruction had been started without delay, 130 days would have been required to get the two wells in production again. They agreed that the net value of the production — i. e., the net income realized from oil produced — which appellants would have received during the 130 days would have been $60,000.
 
 
 4
 After the platform was destroyed by the hurricane, the two wells which had been in production prior to the collision were abandoned. Part of the reservoirs on which the two wells had drawn extended under lands leased to third parties. Other reservoirs of oil which could have been tapped by drilling from the platform also extended under lands leased to third parties. No third parties have drilled offset wells into these reservoirs, but in 1966 appellants drilled into both and currently are obtaining oil from them through wells located at a new offshore station in the same general area as the demolished platform.
 
 
 5
 The commissioner concluded that appellants' damages for loss of production consisted of interest on the $60,000 net production figure for 130 days. The District Court approved the amount so determined. The oil companies contend that the wrong standard was employed in measuring their damages, and urge that they were entitled to an award based on $60,000, the full value of the net production, i. e., 90% of $60,000. By cross appeal the shipowner urges that the District Court erred in taxing against it the commissioner's fee, expenses and court costs.
 
 
 6
 The commissioner and the District Court erred. They focused on the fact that the oil companies had not shown that they had lost any oil as a result of the collision. As they viewed the matter, since the oil was still intact and available the plaintiffs ultimately could bring it to the surface and realize profit therefrom just as they would have during the 130 day period had they been operating — or at least they had not proved with reasonable certainty that this would not occur, so that their loss was purely theoretical. In this court the shipowner continues to focus on the fact that plaintiffs have not lost oil as a capital asset and strenuously insists that to allow $60,000 as damages is to allow a double recovery.
 
 
 7
 All of this wholly misses the mark. The oil companies do not claim for lost oil or damage to oil as an asset. Their suit is for damages suffered as a consequence of the collision of the ship with the platform. Profit on oil production is simply one means of measuring the damage suffered. The plaintiffs have lost the use of their capital investment in lease, platform and producing wells for 130 days during which that investment was tied up without return. The fact that the same amount of profit can be made at a later time with the same investment of capital by removing from the ground a like quantity of oil at the same site does not alter the fact that the plaintiffs are out of pocket a return on 130 days use of their investment. Presumably the oil companies ultimately will produce from the reservoir all the oil that is economic to produce, but, as the District Court pointed out, it will require 130 days longer to do so. The plaintiffs must stay on the site 130 days longer, with investment in place, than necessary but for the ship's negligence.
 
 
 8
 This is no theoretical, shadowy concept of loss. It is squarely within the basic damage doctrine for marine collision of restitutio in integrum, as applied in many comparable situations. Thus, for the vessel laid up for repairs:
 
 
 9
 In order to make full compensation and indemnity for what has been lost by the collision, restitutio in integrum, the owners of the injured vessel are entitled to recover for loss of her use, while laid up for repairs. When there is a market price for such use, that price is the test of the sum to be recovered. When there is no market price, evidence of the profits that she would have earned if not disabled is competent; but from the gross freight must be deducted so much as would in ordinary cases be disbursed on account of her expenses in earning it; in no event can more than the net profits be recovered by way of damages; and the burden is upon the libellant to prove the extent of the damages actually sustained by him.
 
 
 10
 The Potomac, 105 U.S. 630, 631, 632, 26 L.Ed. 1194 (1882). Accord, The Conqueror, 166 U.S. 110, 17 S.Ct. 510, 4 L.Ed. 937 (1897); The Pocahontas, 109 F.2d 929, 931 (2d Cir.), cert. denied, sub nom. Eagle Transport Company v. United States, 310 U.S. 641, 60 S.Ct. 1088, 84 L.Ed. 1409 (1940); Agwilines, Inc. v. Eagle Oil & Shipping Co., 153 F.2d 869 (2d Cir.), cert. denied, sub nom. Agwilines, Inc. v. Motorship San Veronico, 328 U.S. 835, 66 S.Ct. 980, 90 L.Ed. 1611 (1946). As to vessel under charter, City of Miami v. Western Shipping & Trading Co., 232 F.2d 847 (5th Cir. 1956); The El Monte, 252 F. 59 (5th Cir.), cert. denied, sub nom. Southern Pacific Co. v. Stag Line, 248 U.S. 573, 39 S.Ct. 11, 63 L.Ed. 427 (1918).
 
 
 11
 Brooklyn Eastern District Terminal v. United States, 287 U.S. 170, 53 S.Ct. 103, 77 L.Ed. 240 (1932) points out that, depending upon the circumstances, the damages in some instances may be the value of hire of another vessel, in others the value of hire of the disabled vessel, in others the return upon capital, and, of course, in some cases no damage at all.[1]
 
 
 12
 The appellee shipowner derives no aid from the fleet cases on which it relies. If the shipowner is carrying his own cargo and has another vessel available as a temporary replacement for the one under repair he has a duty to use it to mitigate damages and, having earned the profit with the otherwise idle replacement, cannot recover for detention of the vessel being repaired.[2] There is no fleet of drilling platforms, no evidence that the plaintiffs had any other platform or could have set a platform in place and obtained any of the 130 days' production. The oil companies are like a single shipowner with his ship laid up. It would be no answer to his claim to assert that he has lost nothing because the same cargo is still on the dock when his ship comes out of repair and that he can move it then — if other cargoes are also then available.
 
 
 13
 Our conclusion is consistent with that of the United States District Court for the Southern District of Texas which in a like case awarded as damages the net production. Continental Oil Company v. M/S Glenville, A.D. No. 2092, Mar. 31, 1967.[3]
 
 
 14
 The appellee urges the inapplicability of shipowner cases because plaintiffs are not shipowners and the platform not a vessel. But the result is no different for a landbased accident. E. g., Cranston Print Works Co. v. Public Service Co. of North Carolina, 291 F.2d 638 (4th Cir. 1961) (natural gas explosion; held, lost profits from damage to boiler house and equipment recoverable); Brooks Transp. Co. v. McCutcheon, 80 U.S.App.D.C. 406, 154 F.2d 841 (1946) (motor vehicle collision; held, loss of drayage resulting from collision recoverable); Restatement, Torts §§ 928, 931 (1939).
 
 
 15
 Our decision on the appeal makes it unnecessary to discuss the contentions made on the cross-appeal.
 
 
 16
 Appellants are entitled to a judgment for 90% of $60,000, with interest thereon from August 9, 1967, the parties having agreed that interest on any sum awarded by the commissioner would commence on that date.
 
 
 17
 As to the appeal, reversed and remanded with directions. As to the cross-appeal, affirmed.
 
 
 
 Notes:
 
 
 [1]
 InBrooklyn Terminal, the plaintiff, with one tug disabled by defendant's fault, used its other two tugs to perform the work previously done by three. Plaintiff presented no evidence of extra expense incurred or increased wear and tear on the two tugs. Thus, having performed the work of the idle tug and presumably earned such profit as there was in the work, and having proved no increase in cost, it could not recover for detention of the tug under repair. This has no application to the oil companies in this case whose work was closed down.
 
 
 [2]
 Brooklyn Terminal,supra; City of Peking, 15 A.C. 438, 6 Asp. 572 (1890). Also see the full discussion in Sinclair Refining Co. v. America Sun, 188 F.2d 64 (2d Cir. 1951), and Bue, Admiralty Law in the Fifth Circuit, 5 Hous.L.Rev. 767 at 919-920.
 
 
 [3]
 We need not consider whether lost profit or a fair return on investment is a better measure. See the discussion inSinclair Refining, supra. The only evidence before us is of lost profit. The shipowner has not asserted that the profit is excessive but has stood on the erroneous theory that profits are not recoverable at all, only interest on profits.