**GATEWAY WESTERN RAILWAY COMPANY, Plaintiff,**

v.

**AMERICAN RIVER TRANSPORTATION COMPANY, and M/V JOYCE HALE in rem, and John Ronnie Fridell and Curtis Whitehead, Defendants.**

No. 93–3253.

United States District Court,
C.D. Illinois,
Springfield Division.

May 24, 1995.

Paul M. Brown, Neal C. Stout, St. Louis, MO, for plaintiff.

Gary T. Sacks, Joel K. Goldstein, Alan K. Goldstein, St. Louis, MO, for defendants.

## OPINION

RICHARD MILLS, District Judge:

Admiralty.

A question of lost profits.

On the morning of April 19, 1992, the tow of the M/V JOYCE HALE collided with a railroad bridge spanning the Mississippi River. The Plaintiff owns the bridge and the Defendants own and operate the vessel. The narrow issue before the Court is whether as a matter of law recovery for lost profits is limited to the period in which the bridge was out of service for repairs.

Defendants maintain that under maritime law lost profits are limited to the period the bridge was out of commission being repaired—approximately two months. Conversely, Plaintiff contends that all lost profits proximately caused by the collision, including lost profits after the bridge was fixed, are recoverable. Both sides cite authority for their respective positions.

### I. Applicable Law

Because the damage to the bridge was allegedly caused by a vessel on a navigable water, the Court has maritime jurisdiction. 46 U.S.C.App. § 740.[1] When jurisdiction is based in admiralty, substantive admiralty law applies. East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864, 106 S.Ct. 2295, 2298, 90 L.Ed.2d 865 (1986). According to the Supreme Court, substantive admiralty law is "an amalgam of traditional common law rules." Id.

The "amalgam" of admiralty rules must be applied with due consideration of the

---

[1.] Prior to the adoption of 46 U.S.C. § 740 in 1948, admiralty jurisdiction did not extend to claims for damages asserted by railroads when vessels damaged their bridges. See Cleveland

underlying purpose of maritime jurisdiction. As explained by Justice Story over a century-and-a-half ago:

> A court of admiralty is, as to all matters falling within its jurisdiction, a court of equity. Its hands are not tied up by the rigid and technical rules of the common law, but it administers justice upon the large and liberal principles of courts which exercise general equity jurisdiction.

The David Pratt, 7 Fed.Cas. 22, 24 (D.C.Me. 1839) (No. 3597), quoted in Pizani v. M/V Cotton Blossom, 669 F.2d 1084, 1089 (5th Cir.1982). In other words, a court sitting in admiralty is "privileged to exercise flexibility and award what is fair." Complaint of Valley Towing Service, 629 F.Supp. 139, 147 (E.D.Mo.1985).

In admiralty, the maxim for computing damages in a collision case is restitutio in integrum or restoration to the previous condition. The Baltimore, 75 U.S. (8 Wall) 377, 385, 19 L.Ed. 463 (1869). In the case of two vessels colliding, if a vessel is a total loss, the standard measure of damages is the market value of the ship plus interest and freight pending her salvage value. THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW, § 13–5 (1987).

If the damaged vessel is not a total loss, the owner is entitled to the cost of repairs, salvage expenses, out of pocket expenses and detention damages. Id. Detention damage—sometimes called loss of use damage—is the amount of profit lost during the period of detention. Id.

Detention damage is traditionally calculated using the three voyage rule. Kim Crest, S.A. v. M.V. Sverdlovsk, 753 F.Supp. 642, 650 (S.D.Tex.1990). Pursuant to the three voyage rule, detention damage is computed by determining the charter rate for the voyage immediately preceding the collision, the charter rate during the collision, and the charter rate of the first voyage succeeding the casualty and averaging them. The aver-

---

Terminal & Valley R.R. v. Cleveland Steamship Co., 208 U.S. 316, 28 S.Ct. 414, 52 L.Ed. 508 (1908).

age is then applied to all charters lost during the detention. *Id.*

When a vessel negligently strikes a shore structure or other fixed object, detention damage is also recoverable. *See e.g., Crown Zellerbach Corp. v. Willamette–Western Corp.*, 519 F.2d 1327 (9th Cir.1975). How detention damage is calculated in such a situation, however, varies. *Compare Continental Oil Co. v. S.S. Electra*, 431 F.2d 391 (5th Cir.1970), *cert. denied*, 401 U.S. 937, 91 S.Ct. 925, 27 L.Ed.2d 216 (1971) (allowing oil company to recover for lost profits on 130 days worth of production) *with Bolivar County Gravel Co. v. Thomas Marine Co.*, 585 F.2d 1306 (5th Cir.1978) (not allowing dredge company to recover for lost profits on 10 days worth of lost production).

Defendants contend Plaintiff can only recover lost profits for the time in which the bridge was out of use. In other words, Defendants argue that the bridge should be treated the same as if it were a vessel. Conversely, Plaintiff argues that equity demands that it be allowed to recover all lost profits proximately caused by the collision.

## II. *Analysis*

■ As previously noted, the underlying principle to be considered is *restitutio in integrum.* Thus, in admiralty, "property owners are to be compensated fully for all losses incurred, in a manner which will restore them to the condition which would have existed had the casualty not occurred." *Complaint of Valley Towing Service*, 629 F.Supp. 139, 145 (E.D.Mo.1985); *See Sutton River Services, Inc. v. Inland Tugs Co.*, 1985 A.M.C. 858, 1984 WL 1462 (S.D.ILL 1984) (noting that a plaintiff can recover for all lost profits resulting from the negligence of the defendant). Therefore, if liability is established, Plaintiff is entitled to be "made whole."

In this case, being "made whole" would include recovery for all lost profits sustained as a result of the damage to the bridge. For example, if Plaintiff lost contracts as a result of the bridge being out of commission, said

losses might extend for a period beyond the two months the bridge was being repaired. On the other hand, Plaintiff is only entitled to any lost profits directly resulting from the bridge being out of commission.

Such a calculation would be consistent with how detention damages are figured in cases involving vessels. In a case where a vessel is damaged, after the damaged vessel is repaired, its owner can get new charters and sustains no further damage. Additionally, the three voyage rule accounts for market conditions after the repair period. Thus, in cases involving vessels, a full measure of lost profit is recoverable.[2]

The same is also true when an oil facility is negligently damaged by a ship. After the facility is back into operation, there are no more damages because production can resume at previous levels. *See Continental Oil Co. v. S.S. Electra*, 431 F.2d 391 (5th Cir. 1970), *cert. denied*, 401 U.S. 937, 91 S.Ct. 925, 27 L.Ed.2d 216 (1971). In such cases, the owners are getting full compensation for the profits lost due to the collision.

## III. *Conclusion*

In this case, the railroad may or may not have been able to go back into full operation following the bridge repair. If full operation was not possible, Plaintiff's lost profits may extend beyond the two month period. However, any such losses would have to be caused by the bridge being out of commission.

In any case, Plaintiff will be required to prove lost profits with proof "sufficient to bring the issue outside the realm of conjecture, speculation or opinion unfounded on definite facts." *Complaint of Valley Towing Service*, 629 F.Supp. 139, 146 (E.D.Mo.1985).

*Ergo*, Defendants' motion for partial summary judgment is DENIED.

---

**2.** Consistent with the principles of equity, the three voyage rule is not rigidly applied if it will result in an unfair calculation of damages. *See*

*Kim Crest, S.A. v. M.V. Sverdlovsk*, 753 F.Supp. 642, 650 (S.D.Tex.1990).