**AGIP PETROLEUM COMPANY, Inc, Plaintiff,**

v.

**GULF ISLAND FABRICATION, INC., et al., McDermott Inc., Snamprogetti U.S.A., Inc., and Petro–Marine Engineering of Texas, Inc., Defendants.**

**Civil Action No. H–94–3382.**

United States District Court, S.D. Texas, Houston Division.

Aug. 25, 1998.

See also, 3 F.Supp.2d 754.

J. Harrell Feldt, Houston, TX, for Agip Petroleum Co.

James M. Tompkins, Houston, TX, for Gulf Island.

Innes MacKillop, Houston, TX, for McDermott, Inc.

Steve Roberts, Houston, TX, for Snamprogetti USA, Inc.

Michael P. Morris, Houston, TX, for Petro–Marine Engineering.

Opinion on the Measure of Damages

HUGHES, District judge.

1. *Introduction.*

An oil company has sued four contractors who capsized a production platform during construction, delaying recovery from its reservoir of gas as well as condensate and oil. The oil company wants the market price for the gas that would have been produced during the half-year's delay as compensation. The law allows recovery of the difference between the value of the income stream that would have been generated by the field if production had begun at the original installation date less the value of the income stream generated after the actual installation, with both discounted to the original starting date.

2. *Background.*

AGIP Petroleum has been developing its gas properties offshore Louisiana. It hired four contractors to build a production platform on Grand Isle Block 102. During installation, the jacket capsized because of defective mud mats. Production from the field's wells was delayed an average of 170 days. *See Agip Petroleum, Co. v. Gulf Island Fabrication, Inc.,* 3 F.Supp.2d 754 (S.D.Tex.1997)(Opinion on Coverage with factual background).

3. *Measures of Damages.*

The oil company has proposed three ways to calculate its damages from the delay in production: (a) lost revenue without credit; (b) lost revenue with credit; and (c) fair return on its investment. The contractors have proposed a fourth model: a comparison

of the value of future production with and without the delay. *See* J. James Cooper & James P. Lam, *Recovery of Economic Damages for Delayed Offshore Production,* 28 J. MAR. L. & COM. 323 (1997)(history of the four models).

### 4. *Lost Revenue.*

The oil company wants the contractors to pay it the dollar price of the gas that it would have produced during the six-month delay. This is the equivalent of allowing a farmer to recover for the value of two wheat crops because the harvester he hired arrived one month late. Absent an intervening hail storm, he can only grow one crop and will eventually harvest it. Neither the wheat nor gas has been lost; only the value of recovering the resource sooner rather than later is lost.

AGIP also proposes that its damages may be calculated as the lost revenue less credit for the gas retained in the reservoir, with the credit being the price of the gas discounted from the end of the reservoir's productive life. This assumes that the six months of delayed production is recovered only as the last production; the first production becomes the last. Reason—legal and economic—requires comparison between similar things—two cash flows measured at the same time by the same criteria. If we were concerned with particular cubic feet of gas, reservoir physics would suggest that each month's production is simply delayed six months since gas nearest the perforations in the casing will be recovered first no matter how long the well's production is delayed.

### 5. *Return on Investment.*

The oil company says its loss can be measured by the rate of return it commonly earns on its investments. *See Continental Oil Co. v. S.S. Electra,* 431 F.2d 391, 393 n.3 (5th Cir.1970)(suggesting return on investment as an alternative to lost net revenues). While there may be cases making compensation based on reasonable rates of return on investment the best alternative, under these facts the return earned by the oil company on other projects is far more an uncertain guide to its actual loss than the difference between its two expected cash flows.

A comparison of the company's return on other projects with this one would invite endless disputes about the factors and their precision. Production statistics for the first six months are available for this reservoir; it has been producing for four years.

Restoration of the cash flow restores the company's investment value to its pre-delay level because the market value of the company's property in the reservoir is measured by its capitalized cash flow. Paying the oil company by its company-wide return on its investment would honor the historic data of its cash investment rather than the economic data of the expected yield of this reservoir.

### 6. *Lost Value.*

The practical and economic measure of an oil company's loss from delayed production is the difference between the net revenue flow with and without the delay. On the date that production would have begun without the collapse, the oil company could have easily calculated the net present value of the income stream from the gas to be recovered over the life of the field. If its engineers and accountants were told that production was going to be delayed six months, they could have calculated the net present value of the income stream adjusted for the longer time. *See Nerco Oil & Gas, Inc. v. Otto Candies, Inc.,* 74 F.3d 667, 669–70 (5th Cir.1996); *cf. Continental Oil Co. v. S.S. Electra,* 431 F.2d 391 (5th Cir.1970).

The oil company says that this is an unreliable measure because the actual production volumes, gas prices, interest rates, and other contingencies—including hurricanes in the gulf and wars in the Middle East—are unknowable. These uncertainties are what makes oil exploration a business; they are the grist for management's decision mill, with the assistance of information from markets for gas, insurance, and company equity. *See generally* THE BUSINESS OF PETROLEUM EXPLORATION (Richard Steinmetz, ed., American Association of Petroleum Geologists 1992); C. JACKSON GRAYSON, JR., DECISIONS UNDER UNCERTAINTY: DRILLING DECISIONS BY OIL AND GAS OPERATORS (Harvard 1960).

The uncertainty of the future flows has been diminished by the slow progress of this case in the court; we now have the actual production data for four years. Once the smoke blows clear, valuing the loss from delayed production is essentially the same process as pricing two annuities. The value of an annuity that pays an installment for ten years starting this year is slightly but measurably different from an annuity that pays the same installment for ten years starting next year. The installments may be fixed or variable, and they may be absolute or conditional, but reasonable and comparable prices can be calculated.

Parenthetically, discounting the delayed initial production as if it were recovered at the end of the field's life should yield a value equal to discounting the entire production for six months.

### 7. *Conclusion.*

AGIP's damages from the delay in production will be the difference between the net present value of the expected cash flows from the planned and actual production dates.

Interlocutory Judgment on the<br>Measure of Damages

AGIP's damages from the delay in production will be the difference between the net present value of the expected cash flows from the planned and actual production dates.