Mildred R. COPELAND, Appellant,

v.

The GREYHOUND CORPORATION,
Appellee.

No. 21407.

United States Court of Appeals
Fifth Circuit.

Nov. 4, 1964.

Rehearing Denied Dec. 9, 1964.

John K. Calhoun, Atlanta, Ga., for appellant.

Edward W. Killorin, Robert R. Richardson, Atlanta, Ga., R. Wilson Smith, Jr., Gainesville, Ga., Gambrell, Harlan, Russell & Moye, E. Smythe Gambrell, Cicero Garner, Jr., Atlanta, Ga., Paul L. Hanes, of counsel, for appellee.

Before TUTTLE, Chief Judge, BELL, Circuit Judge, and WHITEHURST, District Judge.

TUTTLE, Chief Judge.

This appeal presents the unusual case in which an appellant makes an extremely plausible and cogent argument that in the undisputed circumstances surrounding a bus-automobile collision, the trial court's finding that the driver of the bus was not negligent must be reversed because clearly erroneous, or because under the agreed circumstances negligence follows as a matter of law.

Facts which are not in dispute, and which were largely found by the trial court in this non-jury trial for personal injury, depict a collision between a Greyhound bus with the Rambler automobile of Mrs. Copeland, which it was overtaking just within the city limits of Winder, Georgia, on Highway 29, at early dusk on a wet afternoon. The facts needed to test out the appellant's theory are as follows:

The bus had followed Mrs. Copeland's car for some ten miles, driving west towards Atlanta from Athens. It had been raining, but just before the time of the accident the rain had stopped, although the road was still wet and slick. Both Mrs. Copeland and the bus had slowed down to approximately 25 to 30 miles an hour as they entered the city limits of Winder. The bus was following the automobile at a distance of a least 105 feet.[1] The bus driver testified without contradiction that under these circumstances and speed, he could stop the bus "in a hundred feet or less." On account of the lights from oncoming traffic, Mrs. Copeland drove to the extreme right of her lane in the two-lane road, and on account of the slippery condition of the road either her right rear or both of her right wheels slid off of the right side of the road and dropped 6 to 8 inches onto an unpaved shoulder.

She continued forward at a diminished speed trying to regain the highway by turning her car at an angle towards the left. The bus driver saw Mrs. Copeland's dilemma when it occurred and described the manner in which her car "fish-tailed" forward up the highway in attempting to regain its position on the road.

The evidence fully warrants the following findings of fact made by the trial court:

"Clarence O'Neal, the driver of defendant's bus, saw Mrs. Copeland's car run off the pavement. He first decided to try to pass her on the right of the dirt shoulder and turned his bus in that direction but seeing the condition of the surface and deciding he could not safely pass to the right, he then turned the bus to the left and started to go around Mrs. Copeland's car to the left and

---

1. The bus driver testified that he was following at 3 to 4 bus lengths and that the bus had a length of 35 feet. Mrs. Copeland testified that the bus was following her at "a safe distance." The trial court found that the bus was following her at 3 lengths, and that the length of the bus was 37 feet.

had reached a point where the front of the bus was on the center line of the highway when Mrs. Copeland's station wagon came back onto the highway with a sudden lurch and headed diagonally across the highway toward the left hand side of the highway in the direction in which Mrs. Copeland was traveling and when her automobile had reached a point about the center line of the highway immediately in front of the bus, the bus collided with Mrs. Copeland's car striking it about the left front door where Mrs. Copeland, the driver, was seated, crushing the door inward and causing Mrs. Copeland to suffer serious injury to her person. As a result of this occurrence, she suffered much pain, lost time from her work, incurred hospital and medical expenses and her automobile was badly damaged.

"The bus stopped on the highway within a few feet of the point where the collision occurred, while the automobile of Mrs. Copeland, its transmission rendered ineffectual by the collision, rolled slowly across the parking area of the East Side Filling Station and into a drainage ditch on the west side of said station where it came to rest."

The trial court then made the following findings:

"Both the plaintiff and the driver of the defendant's bus were faced with a sudden emergency which was created by Mrs. Copeland's car dropping from the edge of the pavement onto the dangerously low dirt shoulder of the road. The driver of the defendant's bus did not have sufficient time within which to determine with certainty the best course to pursue in the emergency.

"The Court finds that the defendant was not guilty of any negligence which proximately caused or contributed to the injuries and damages suffered by plaintiff."

Further significant evidence given by the bus driver is contained in the following questions and answers:

"Q. Now, Mr. O'Neal, from your familiarity with this highway at the time of this accident, in your judgment as a bus driver, was there sufficient area of graded shoulder to allow you to pass to the right off of the paved portion of the highway of the Copeland car?

"A. I don't believe it was, no, sir.

"Q. Were there vehicles approaching, headed in an easterly direction approaching your car and Mrs. Copeland's car and other cars?

"A. Yes, sir."

The thrust of the appellant's criticism of the trial court's determination that the bus company was not negligent, is that the bus was following at a relatively slow rate of speed with ample distance between it and the preceding car to come to a stop even if Mrs. Copeland's car had come to a complete stop itself, but especially since it proceeded another 30 feet before contact would be made if the bus continued forward; there was no room to pass on the right; it was unsafe to pass on the left because of oncoming traffic; and the bus driver failed to do the only thing that would have prevented the accident, which was to come to a stop within the ample distance available for him to do so.

The appellant contends that this court would be warranted in setting aside the judgment here on either one of two grounds: (1) by application of the clearly erroneous rule, or such modification of it as applies where this court is dealing with ultimate rather than evidentiary or basic fact finding, cf. Galena Oaks Corporation v. Scofield, 5 Cir., 218 F.2d 217, or, (2) the court determined that the bus driver faced a "sudden emergency" and thus applied the sudden emergency standard of care, whereas, on the facts of this record, such determination could not stand. Appellant argues that it is apparent from the findings of the trial court

that it applied a standard of care to the conduct of the bus driver somewhat less burdensome or demanding than would normally be the case because of the court's determination that Mrs. Copeland's mishap caused the bus driver to be "faced with a sudden emergency," whereas the circumstances outlined above demonstrate that only Mrs. Copeland was faced with a sudden emergency by reason of her car's slipping off the highway. She claims that what happened to her car was what might normally be expected to occur and which gives rise to the Georgia statutory requirement that a following car remain at a safe distance "having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." [2]

In view of our reluctance, shared by all appellate courts, to second-guess trial courts or other fact finders with respect to determinations of fact, we look first to see whether there is merit in the second ground for reversal. Undoubtedly there is such a concept in the automobile negligence field as sudden emergency. This in effect is the doctrine that where either the victim or the perpetrator of an injury is faced with a situation which, for his or others' safety, compels him to act instantly to avoid a collision or injury, his conduct, either as negligence or contributory negligence, is weighted by the test of the person of ordinary prudence placed in such position, and even though he does not make the wisest choice, or even if he acts contrary to ordinances or traffic laws, the fact finder may exonerate him from guilt.

"Where one is confronted with a sudden peril requiring instinctive action, he is not, in determining his course of action, held to the exercise of the same degree of care as when he has time for reflection." 1 Blashfield's Cyclopedia of Automobile Law and Practice, § 668. Cone v. Davis, 66 Ga.App. 229, 232, 17 S.E.2d 849.

In view of the fact that of the three avenues that would normally be available to the following vehicle to prevent injury to the preceding one, two of them were effectively closed in this case since there was not room to pass on the right and an oncoming car made it impossible to pass on the left, and in view of the fact that the bus driver elected both of them in succession rather than the one which, according to his own testimony, would have clearly afforded protection to Mrs. Copeland, we agree that the trial court's determination that the bus driver faced a sudden emergency would probably be the only basis for the trial court's not finding the bus driver guilty under ordinary rules of care applicable to a following vehicle. We can, therefore, fully appreciate the attention which the appellant pays to this determination of sudden emergency as applied to the bus.

Careful examination of the record and the language of the court's findings indicate that the nature of an appellate court's determination with respect to whether the bus was faced with a sudden emergency is precisely the same kind of determination that would have to be made in deciding whether the bus driver had transgressed ordinary standards of care. Thus we do not avoid the need for determining whether the trial court's determination was clearly erroneous or leaves this court with "the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746; Galena Oaks Corp. v. Scofield, 5 Cir., 218 F.2d 217, 219.

Dealing now with the question whether the trial court's determination that the bus driver was faced with a sudden emergency is clearly erroneous, we should say that it is very difficult for us to understand the action of such a driver who, while driving at a "safe distance" behind Mrs. Copeland's car, upon seeing it drop

**2.** Georgia Code Section 68–1641, provides as follows: "Following too closely.—(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."

off the edge of the highway and angle forward in an effort to get back on the highway, with the practical mathematical certainty that when this feat is accomplished it will take up all or a major part of the two lanes of traffic, would not instinctively bring his heavy bus to a stop, if this can be accomplished with no possibility of danger to the passengers. The actual conduct of the driver here appears to prove that, having ruled out the option of slowing down, he then sought to find some way to get by Mrs. Copeland's car, presumably hoping that he could do so before she was able to accomplish the maneuver that was so apparent to him. We find no Georgia case in which the type of occurrence that placed Mrs. Copeland's car in a difficult position has been held to constitute a sudden emergency for the driver of the following car which had ample time to come to a stop upon seeing a preceding car get into difficulty.

 The real concept of the "safe distance" rule is that a following car must travel at sufficient distance behind the preceding vehicle to permit it to come to a stop if the unexpected happens, for normally if the preceding car acts in a normal and proper manner, there will be no need for the distance between it and the following car to be maintained. The Georgia law is clear on this point. In the case of Jackson v. Camp & Brown Produce Co., 92 Ga.App. 359, 88 S.E.2d 540, the court was considering the correctness of a charge by the trial court on the doctrine of comparative negligence, which would apply in Georgia if the plaintiff had been partially responsible for the injury for which he was suing. The trial court had given a charge on comparative negligence on the assumption that the jury could find that when the plaintiff, Mrs. Jackson, approached a traffic light and it suddenly turned yellow her "sudden stop" was negligent as to a following driver who bumped her car from the rear. The Court of Appeals held that the charge was erreoneous because, on the facts testified to, Mrs. Jackson's stop did not place the following car in a sudden emergency. The court cited

2 Blashfield's Cyclopedia of Automobile Law and Practice, § 942, as follows:

"A motorist has right to follow another motorist at reasonable and safe distance. However, he must govern his speed or keep back a reasonably safe distance *so as to provide for the contingency of a car in front suddenly stopping*, maintaining a proper lookout for the car immediately preceding him, and so that he can stop without a collision, or can turn out sufficiently to pass the vehicle in front without going across the street in the way of traffic approaching from the opposite direction, as that will naturally result in collision with such traffic." (Emphasis added).

So, too, in Parker v. Bryan, 93 Ga.App. 88, 91 S.E.2d 49, the court again quoted this language with approval.

The language of the Georgia cases comes very close to establishing an absolute rule that the following vehicle must be at such distance as to make it his duty to stop unless he, in fact, passes safely. We need not determine whether this is in fact an absolute rule of law in Georgia, because it is clear that on the facts that are not in dispute in this case, the Georgia cases require us to hold that the bus driver was not faced by a sudden emergency.

When Mrs. Copeland's car acted abnormally, this, in a real sense, is what might normally be anticipated by the very rule which required the bus driver to lag behind a distance sufficient to permit him to come to a stop if Mrs. Copeland's car had unexpectedly come to a halt. It is not a sudden emergency for a driver to be confronted with what he might normally have expected, or when he is proceeding in accordance with the legal standard which is established for the purpose of giving him sufficient opportunity to prevent injury when the abnormal happens.

 We are thus forced to the conclusion that the determination by the trial court that the bus driver was faced

with "a sudden emergency which was created by Mrs. Copeland's car dropping from the edge of the pavement onto the dangerously low dirt shoulder of the road" was clearly erroneous, and must be set aside.

The court's application of the sudden emergency principle to the facts of the case clearly had a bearing on its determination that the Greyhound bus driver was without negligence. It appearing, therefore, that an incorrect legal theory was one of the ingredients of the court's ultimate determination on the issue of negligence, the case must be remanded for further consideration by the trial court without the appellees having the benefit of the finding that they were faced with a sudden emergency. Cf. Galena Oaks Corp. v. Scofield, 5 Cir., 218 F.2d 217.

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.