CLIFF, JR., INC., Plaintiff-Appellees,

v.

M. V. CAPTAIN WILL et al., Defendants,

Plaquemine Oil Sales, Corporation, Defendant-Appellant,

Clifford Quinn, Sr., Intervenor-Appellee.

No. 74–3614
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Jan. 23, 1976.

Rehearing Denied April 9, 1976.

See 529 F.2d 1169.

---

1. 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

* Rule 18, 5 Cir., *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,* 5 Cir. 1970, 431 F.2d 409, Part I.

James G. Burke, Jr., New Orleans, La., for defendant-appellant.

Rene S. Paysse, Robert B. Sutherlin, New Orleans, La., for Cliff, Jr.

Joe L. Horne, New Orleans, La., for Clifford Quinn, Sr.

Before WISDOM, BELL and CLARK, Circuit Judges.

PER CURIAM:

Barge IFS–209, in tow of the defendant's M/V Captain Will, collided with the plaintiff's vessel, the M/V Cliff, Jr., while it was moored at a pier. The Cliff's mooring lines were broken and she drifted downstream on the Mississippi River, which was in flood stage. The master of the Cliff immediately started her engines. According to the district court, the vessel could have scurried for cover and possibly escaped damage. The master, however, chose a different method of avoiding damage.[1] The maneuver was unsuccessful, and the Cliff was swept under the bow rake of an ocean-going tank barge, capsized, and later sank. The district court awarded $80,000 damages for the loss of the vessel.

Because of the emergency, the district judge properly held that the navigator of the Cliff could not be "charged with the same degree of calm prudence and foresight that those who have the benefit of ample time to reflect upon their future conduct are charged with". Cf. Copeland v. Greyhound Corp., 5 Cir. 1964, 337 F.2d 822.[2] Moreover, the Cliff was placed in the perilous position by the initial collision, which the defendant conceded was the sole fault of the Captain Will. The defendant, therefore, had a "substantial burden" to prove that, had it not been for the negligence of the navigator of the Cliff, the loss of that vessel could have been avoided. Oil Screw Noah's Ark v. Bentley & Felton Corp., 5 Cir. 1963, 322 F.2d 3, 7. See Southport Transit Company v. Avondale Marineways, 5 Cir. 1956, 234 F.2d 947. The district court's finding that the Cliff's navigator acted reasonably under the circumstances is not clearly erroneous and must be affirmed. See Fed.R. Civ.P. 52(a); Zenith Radio Corp. v. Hazeltine Research, Inc., 1969, 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129.

---

1. He turned back to assist the Captain Will, faced up against the side of Barge IFS–209 and pushed forward. During this time, the bow of the IFS–209 passed clear of an ocean-going tank barge. After pushing against the IFS–209 for a short time, the captain of the Cliff testified that he came full astern on his starboard engine and full ahead on his port engine with hard right rudder but could not turn his vessel because of the presence of the adjacent dock. The Cliff, then perpendicular to the current of the river, faced up to Barge IFS–209, but was unsecured to that barge. It was at this time that the Cliff came under the rake of the ocean-going vessel.

2. [T]here is . . . in the automobile negligence field . . . [a] doctrine that where either the victim or the perpetrator of an injury is faced with a situation which, for his or others' safety, compels him to act instantly to avoid a collision or injury, his conduct, either as negligence or contributory negligence, is weighted by the test of the person of ordinary prudence placed in such position, and even though he does not make the wisest choice, . . . the fact finder may exonerate him from guilt. 337 F.2d at 825.

At the time of the sinking, the marine insurance premium of the Cliff had been paid for the entire policy year. Five months of the year had not yet elapsed. Clifford Quinn, the sole stockholder of the corporate owner of the Cliff, moved to intervene to assert a claim for the portion of the annual premium allocable to the five months after the collision. After noting that there was no opposition to the motion for intervention, the district court granted it. The defendant now objects to Quinn's intervention. Because Quinn is the real party in interest as to the five months premium, we hold that the district court's order was not plain error.

The district court awarded Quinn the five months insurance premium, $4875. The defendant argues that this award is contrary to established law, citing *Sinclair Refining Co. v. The American Sun,* 2 Cir. 1951, 188 F.2d 64, 67; *The Baltimore Maru,* 5 Cir. 1926, 11 F.2d 836, 838; *Atkins v. Alabama Drydock & Shipbuilding Co.,* S.D.Ala.1960, 195 F.Supp. 944, 951; *The Esso Camden,* S.D.N.Y.1956, 141 F.Supp. 742, 747; *Isthmian SS Co. v. Jarka Corp.,* D.Md.1951, 100 F.Supp. 856, 862. In each of these cases the court refused to award damages for insurance premiums allocable to the detention time of a vessel undergoing repairs. The plaintiffs in these cases suffered no "loss" from payment of the premiums because they received a quid pro quo—insurance coverage during the detention period.

Quinn attempts to distinguish these cases by asserting that he received no coverage during the five months following the collision because the vessel had already been destroyed. In other words, there was simply no property to be insured during that period. This argument, however, misses the mark. Even though no property was insured during the last five months of the year for which Quinn's annual premium was paid, *Quinn did receive the quid pro quo for the five-months premium.* His insurance policy provided that the entire premium would be deemed earned if the vessel became a total loss at any time during the year. The last 5/12 of the annual premium was therefore just as much a cost of the policy as was the first 7/12 of the premium. For this cost, he received insurance coverage that provided a recovery for the loss of his vessel. The portion of the annual premium that is allocable to the last five months of the policy year, therefore, is not a loss to Quinn.

We affirm the damages award for the loss of the plaintiff's vessel; we reverse the award of the five months insurance premium.