## THE LAGONDA.[1]

### THE JAMES A. GARFIELD.

### MATHIESEN *v.* THE JAMES A. GARFIELD.

*(District Court, E. D. New York. December 17, 1890.)*

1. DEMURRAGE—YACHT.
   Demurrage may be recovered for the detention of a yacht, caused by a wrongful act, at the market rate of such craft, though the yacht was never let for hire, and no substitute was employed during the time of such detention.

2. SAME—AMOUNT OF DEMURRAGE—EXPERT TESTIMONY.
   The amount of demurrage to be recovered by a pleasure yacht may be shown by the testimony of those engaged in chartering yachts, as to what, in their opinion, the owner could have obtained for her use during the period of detention.

In Admiralty. On exceptions to commissioner's report. See 42 Fed. Rep. 304.

*R. D. Benedict,* for libelant.
*Goodrich, Deady & Goodrich,* for claimant.

BENEDICT, J. This case comes before the court upon exceptions to the commissioner's report. The action is brought to recover the dam-

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

ages sustained by the libelant by reason of injuries done to the steam yacht Lagonda, in a collision between that yacht and the tug James A. Garfield. An interlocutory decree in favor of the libelant was entered, and the case referred to a commissioner, to ascertain and report the amount of the libelant's damages. The commissioner, among other things, reported that the yacht had been detained eight days, while undergoing repairs made necessary by the collision, and allowed the sum of $48 for such detention; being interest for eight days on $36,000, the cost of the yacht. To this the libelant excepts. It appeared before the commissioner that the Lagonda was a pleasure boat, kept for the personal use of the owner, and without any intention to use her for profit; that the yacht was in commission at the time of the collision; that she was detained eight days, while repairing the damages caused by the collision. No evidence was introduced to show that the owner desired or sought a substitute for the yacht during that period. Upon the evidence before him, the commissioner found that there was no market rate for the use of yachts of the size and character of the Lagonda, and accordingly he allowed as damages for the detention of the yacht eight days' interest on the amount she cost the owner. It cannot be doubted that demurrage is recoverable for the detention of a yacht caused by a wrongful act. In the case of *The Walter W. Pharo*, 1 Low. 437, Judge LOWELL gave demurrage for a yacht kept, as this one was, for pleasure, and never let for hire. It was there said: "It is no concern of the respondents what use the libelant chose to put his vessel to. He had the right to change his mind at any moment." So here, although it may be that the owner of this yacht at the time she was run into had no intention of chartering her, or employing her for profit, still he was at liberty to charter her at any moment. Death, sickness, loss of fortune, mere whim, might have impelled him to put her to some profitable use. If it appears, therefore, that the yacht could have been chartered by her owner during the time of the detention in question, then any sum he could have realized by chartering her may be recovered by him from the wrong-doer who caused her detention.

The evidence taken by the commissioner was sufficient to show that this yacht could have been chartered for hire at the time she was run into. For instance, one witness called by the claimant, in answer to the question, "What is the market demand for yachts of this class in this port?" says: "The demand is greater than the supply. There is no trouble about chartering." The testimony of other witnesses was to the same effect. I cannot doubt upon the evidence that, if the owner of this yacht had concluded to charter her for hire, he could have done so, and I judge from the testimony that it would have been possible to charter her for eight days only. But that fact is not necessary to a recovery. It was open to the owner to charter his yacht for the month or for the season. It is sufficient to entitle him to recover for her detention, if it appears that he could have realized money from her hire during the period of her detention. The ground upon which the commissioner seems to found his decision is absence of proof of an established rate at which

yachts were chartered, and evidence that the rate in every instance depends upon the personal inclination of the owner; and so he allowed the libelant eight days' interest on the cost of the yacht, and this, although it is manifest that the owner had no intention of realizing interest on his investment. But proof of a rate established by custom, or by repeated similar transactions, cannot be required in a case of this description. If it appears that the yacht could have been chartered for hire, the amount lost to her owner by being deprived of ability to charter her may be shown by the testimony of those engaged in chartering yachts, as to what, in their opinion, the owner could have obtained for her use for eight days in case she had been chartered. The testimony of the witness Manning seems to me to justify the conclusion that this yacht could have been chartered by her owner for a season of three months for the sum of $6,000, the owner furnishing the crew. Under such a charter, the vessel would have earned for her owner in eight days the sum of $552, and that sum libelant is, in my opinion, entitled to recover for her detention.

The first exception on the part of the libelant is therefore allowed. All other exceptions are overruled.