BROOKLYN EASTERN DISTRICT ·TERMINAL *v.*
UNITED STATES.

No. 39.   Argued October 21, 1932.—Decided November 14, 1932.

*Mr. Leonard J. Matteson,* with ·whom *Mr. Oscar R. Houston* was on the brief, for petitioner.

*Solicitor General Thacher,* with whom *Assistant Attorney General St. Lewis,* and *Messrs. Whitney North Seymour, J. Frank Staley,* and *Wm. H. Riley, Jr.,* were on the brief, for the United States.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

On September 30, 1920, the dredge Raritan, belonging to the United States, collided in New York harbor with the steam tug Integrity, belonging to the petitioner. A libel in admiralty to recover the damages to the tug was filed by the petitioner in conformity with an act of Congress whereby the United States consented to be sued. Act of February 16, 1925; c. 241, 43 Stat. 1566. A cross-libel for damages to the dredge was filed by the government. The trial court held both vessels at fault, and determined that the damages to each should be equally apportioned between the owners. A Special Commissioner was appointed to ascertain the damages and report.

The controversy hinges upon an item of demurrage. As to the repair bills ($26,114.57 for the Integrity and $2,230 for the Raritan), as well as some other items, the parties are now at one. The conflict between them, once waged along a wider front, has narrowed to a single point. The District Court, confirming the Commissioner's report, allowed demurrage to the petitioner at the rate of $150 a day, the market hire of another tug, during the seventy-eight days when the Integrity was withdrawn for repairs. This item ($11,700) the Circuit Court of Appeals excluded. 54 F. (2d) 978. A writ of certiorari has brought the case here.

The petitioner was in the business of towing car-floats for railroads between points in New York harbor. It did not use its boats for hire generally. Its business was sufficient to occupy three tugs during regular working hours in the transfer of railroad cars from one point to another. When the Integrity was laid up, the petitioner did not hire an extra tug as a substitute for the one disabled. Instead, it used its two other tugs overtime, and thus kept down the cost while doing business as before. The same crews were employed; but if extra wages were paid, the amount has not been proved. Extra wear and tear there may have been; but there is nothing in the record to indicate how much. Indeed, the witness for the petitioner frankly stated that the loss, if any, from that cause was too uncertain to be measured. The award for demurrage allowed by the District Court and disallowed by the Court of Appeals was not made upon the basis of depreciation of the boats in use. It is measured by expenses that in fact never were incurred, but that might have been incurred and charged to the respondent if the necessities of the business had been something other than they were.

Our decision may not overleap the limitations of the record. To dispose of the case before us we do not need to hold that through the use of the other vessels the pos-

sibility of all demurrage has been excluded by an inexorable rule of law. Other courts have held in situations not dissimilar that demurrage may be measured by the interest on the capital value tied up in the disabled boat during the term of disability and thus unfruitfully employed. *The Susquehanna,* [1926] A. C. 655, 663, 664; cf. *The Greta Holme,* [1897] A. C. 596. To approve or disapprove that measure is unnecessary here, for the record does not contain the figures that would enable us to apply it. Even now the petitioner is not seeking for a judgment upon that basis, nor indeed upon any other basis than the one adopted at the trial. The question narrows itself to this, whether the full-time hire of an extra boat must be charged to the respondent as damage flowing from the collision when there was no need of such a boat to keep the business going, and none in fact was used or paid for. Is an award upon that basis either erroneous in law or extravagant in fact?

Erroneous and extravagant we think it must be held to be. *The Conqueror,* 166 U. S. 110, 125, 134; *The Susquehanna, supra;* cf. *The North Star,* 151 Fed. 168; *The Wolsum,* 14 F. (2d) 371; *Cuyamel Fruit Co.* v. *Nedland,* 19 F. (2d) 489; *Newtown Creek Towing Co.* v. *New York City,* 23 F. (2d) 486; *The Glendola,* 47 F. (2d) 206. The disability of a vessel will not sustain demurrage at the rate of the value of her hire unless an award at such a rate can be seen to be reasonable when the disability is viewed in the setting of the circumstances. *The Conqueror, supra.* Only when thus enlightened can we choose the yardstick most nicely adjusted to be a measure of reparation, in some instances, no doubt, the hire of another vessel, in other instances, it may be, a return upon the idle capital (*The Susquehanna, supra*), in others something else. Only then indeed can we know whether the interference with profit or enjoyment is to be ranked

as substance or as shadow. The vessel may have been employed in a business of such a nature that for the avoidance of loss there is need of the employment of a substitute. In such circumstances the fair value of the hire may be an element of damage, and this whether the substitute is actually procured or not. Cf. *The Lagonda,* 44 Fed. 367; *The Mediana,* [1900] A. C. 113; *Perkins* v. *Brown,* 132 Tenn. 294; 177 S. W. 1158; *Cook* v. *Packard Motor Car Co.,* 88 Conn. 590; 92 Atl. 413. The vessel may be a yacht, employed for pleasure and not for business. Even then, in the judgment of many courts, the value of the use may be considered by the triers of the facts in fixing the recovery if there has been a substantial impairment of that enjoyment for which such vessels are maintained. *The Lagonda, supra; Cook* v. *Packard Motor Car Co., supra; Banta* v. *Stamford Motor Co.,* 89 Conn. 51, 56; 92 Atl. 665; *Perkins* v. *Brown, supra; Hunt Co.* v. *Boston Elevated Ry. Co.,* 199 Mass. 220, 235, 236; 85 N. E. 446; *The Astrakhan,* [1910] P. 172, 181. There are statements in *The Conqueror* (p. 133) that may be in conflict with that view, but they were not essential to the judgment (p. 134), and in the light of later decisions as to the loss of pleasure vehicles are unquestionably in opposition to a strong current of authority. See cases, *supra.* The owner of the Conqueror would not have let his yacht to any one if there had been no occasion to repair her, nor during the season that she was out of service would he have used her for himself. 166 U. S. at p. 134. There was neither interference with profit nor substantial disturbance of enjoyment. The court did not hold that even then there could be no recovery whatever. Cf. *Cook* v. *Packard Motor Car Co., supra,* at p. 596. It held that recovery was excessive when based on the returns of an imaginary letting. We are to have regard in every case to the reasonable probabilities of time

and place and circumstance. Demurrage on the basis of the cost of a substitute, actual or supposititious, may be no more than fair indemnity when gains have been lost or enjoyment seriously disturbed. Demurrage on a like basis may be so extravagant as to outrun the bounds of reason when loss of profit has been avoided without the hire of a substitute and the disturbance of enjoyment has been slight or perhaps fanciful. *The Conqueror, supra.* Cf. *Cook* v. *Packard Motor Car Co., supra,* p. 595; *The Susquehanna,* [1925] P. 196, 207, affirmed [1926] A. C. 655. A wide range of judgment is conceded to the triers of the facts in the choice of the standard to be applied and in the method of applying it. *Cook* v. *Packard Motor Car Co., supra.* The choice, however, may not be arbitrary, nor is the range of judgment without limit. We think that on the face of this award there is declared a principle of assessment that in the setting of the circumstances exceeds the bounds of any discretion allowed to the assessors. In admiralty an appeal to the Court of Appeals is deemed to be a trial *de novo. Munson Steamship Line* v. *Miramar Steamship Co.,* 167 Fed. 960; *Gilchrist* v. *Chicago Ins. Co.,* 104 Fed. 566, 571; cf. *The Abbotsford,* 98 U. S. 440; *Watts, Watts & Co.* v. *Unione Austriaca di Navigazione,* 248 U. S. 9, 21; *Standard Oil Co.* v. *So. Pacific Co.,* 268 U. S. 146, 155. An assessment of damages may be corrected if erroneous in point of law, but also it may be corrected if extravagant in fact.

The doctrine of the "spare boat" cases is invoked by the petitioner as decisive in its favor, but we think without avail. Shipowners at times maintain an extra or spare boat which is kept in reserve for the purpose of being utilized as a substitute in the contingency of damage to other vessels of the fleet. There are decisions to the effect that in such conditions the value of the use of a boat thus specially reserved may be part of the demur-

rage. *The Cayuga,* 7 Blatch. 385, affirmed 14 Wall. 270, 278; *The Favorita,* 8 Blatch. 539, affirmed 18 Wall. 598, 603; *New Haven Steamboat Co.* v. *The Mayor,* 36 Fed. 716, 718; *The Emma Kate Ross,* 50 Fed. 845; *The Providence,* 98 Fed. 133. If no such boat had been maintained, another might have been hired, and the hire charged as an expense. The result is all one whether the substitute is acquired before the event or after. The same doctrine has been recognized in the English courts, where a boat thus held in reserve is known as a standby. *The Mediana,* [1900] A. C. 113. In those courts, however, as in our own, there has been a refusal to extend the doctrine to boats acquired and maintained for the general uses of the business. Just such a state of facts was considered by the House of Lords in *The Susquehanna, supra,* a case hardly to be distinguished from the one at hand. In the speech by Lord Sumner we are told that " the Admiralty by prompt effort and economy in consumption, acting in accordance with their obligation to minimize the damages, managed to get through their work " without the disabled vessel. " They cannot," he continued (p. 663), " get damages based on the use of a standby when in fact they did very well without one."

So here. The petitioner was engaged in an established business using tugs for a single purpose. It had no thought to turn that business into one of a different kind while this tug was out of service. Mindful of the need to minimize the damages, it used to the full its available resources, and was able by special effort to make them do the work. We are unable to accept the argument that the expenses which it saved are to be charged to the respondent as if they had not been saved at all.

The judgment of the Circuit Court of Appeals which modified the judgment of the District Court is accordingly

*Affirmed.*