THE SUPER X.

THE JAMES FLANNERY.

THE SOCONY NO. 16.

District Court, S. D. New York.
March 19, 1936.

Purdy & Purdy, of New York City, for libelant.

Macklin, Brown, Lenahan & Speer, and Alexander, Ash & Jones, both of New York City (Paul Speer and Edward Ash, both of New York City, of counsel), for claimants.

PATTERSON, District Judge.

The case is one where collision repairs and owner's repairs were made concurrently and the question is whether the parties liable for collision damage should pay certain incidental expenses and losses common to both types of repairs.

The libelant's tank barge Super X was in a collision for which the claimants were found liable. The case was sent to a commissioner to report relative to damages.

The collision occurred on August 30, 1929. The injury to the barge was from a bump on the port side aft near the top. At the survey held a few days later it was found that the pieces set in should be released and faired into place and the top guard strake removed and faired or replaced, the barge first to be steamed and made gas free for doing the repairs. Gas freeing is necessary whenever "hot work" is to be done on a barge that carries gasoline. The libelant received bids for making the repairs. The lowest bid was $960. The gas freeing work made up $850 of this figure.

The barge was not rendered unseaworthy by the collision. Repairs were not immediately necessary. She continued in regular service for more than a month. On October 4, 1929, she was taken to a shipyard and the collision repairs were made. At the same time the owner had extensive repairs made on its own account, these repairs costing some $7,000. The facts relative to the owner's repairs were these: The barge had been built in 1928. Trouble soon developed in the shape of leaks around the guard rails. Temporary repairs made in October, 1928, stopped the leaking. In January, 1929, the owner got bids from various concerns for replacing the guards altogether; but as the barge was not leaking at the time and the figures were substantial, no work was then done or contracted for. In May, 1929, the barge went to drydock for semiannual overhauling; nothing was done about the guards because the temporary repairs were still serving. But in October, 1929, the guards started leaking again and the owner determined to have them replaced. These leaks had no connection with the collision. According to the owner's superintendent, the cause for going to dry dock was the leaking of the guards, that being "the most important thing." For replacing the guards it was necessary first to steam the barge and free it from gas.

The items claimed by the libelant as collision damages were $960 for cost of repairs, $25 for survey, $96.50 for towage, $1,194.24 for detention. The commissioner subtracted the cost of gas freeing, $850, from the repairs at $960, making a net figure of $110, and allowed this amount together with survey fee of $25, or a total of $135. He thus disallowed gas freeing, towage, and detention.

In principle, the owner of a vessel damaged by the tort of another is to be reimbursed in full for his loss. The loss ordinarily covers expenses of repairing the damage and also loss of employment of the vessel. The principle applies to damages from collision as well as from other tortious injuries. The Baltimore, 8 Wall. 377, 19 L.Ed. 463; The Cayuga, 14 Wall. 270, 20 L.Ed. 828; The Atlas, 93 U.S. 302, 23 L.Ed. 863. But the burden is on the owner to prove that the damages claimed were the result of the collision. Pan-American Petroleum & Transport Co. v. United States, 27 F.(2d) 684 (C.C.A.2).

Where collision damages are such that repairs are necessary to render the vessel fit for service, and the vessel is accordingly laid up for repairs, the loss of time is chargeable to the party liable for the collision; and it does not matter that the owner at the same time makes repairs of his own, provided they are not urgent and do not extend the time of laying up. In such cases the collision damage is the cause of the delay, and the owner's repairs are merely incidental. Simpson's Patent Dry Dock Co. v. Atlantic & E. S. S. Co., 108 F. 425 (C.C.A.1); Hines v. Sangstad S. S. Co., 266 F. 502 (C.C.A.1); Jones v. United States, 22 F.(2d) 581 (D.C.Va.). The same is true when collision repairs may not be necessary, provided the owner reasonably believes them to be necessary. See Pan-American Petroleum & Transport Co. v. United States, supra.

The cases just mentioned are in contrast to those where the collision damages are of a sort that no immediate repairs are required or reasonably believed to be required, the owner laying the vessel up later because of damages or defects of his own that need urgent attention or because periodical overhauling is due. In such a case the loss of time common to both kinds of repair is not the result of the collision, and the owner cannot recover for it. Clyde S. S. Co. v. City of New York, 20 F.(2d) 381 (C.C.A.2).

■ The damages inflicted on the Super X by the collision were minor in character. They did not render the barge unfit for service. She continued in service for a month. She was sent to the shipyard because the guards, which had leaked before and had been temporarily repaired, began leaking again. As the libelant's superintendent put it, "The guard rails were the most important thing. That is really why she went into dry dock." The detention therefore was not caused by the collision, and it is not chargeable to the claimants. As to detention, the case cannot be distinguished from the Clyde Case, supra.

The towing and the gas freeing go the same way as the detention. These expenses were preliminaries necessary to both sets of repairs, but the proximate cause of these expenses was the repairing done by the owner on his own account. He had to bear these burdens in any event, collision or no collision. The authorities in the main deal with cases of detention, but the reasoning covers any other incident of repairing that is common to the two operations. See The Buffalo Bridge, 1935 A.M.C. 886.[1]

■ The libelant relies on the line of cases allowing as collision damage the estimated cost of repairs where no repairs are actually made or where only temporary repairs are made. The Elmer A. Keeler, 194 F. 339 (C.C.A.2); Pennsylvania R. Co. v. Downer, 11 F.(2d) 466 (C.C.A.2). It is claimed that if the collision damages had never been repaired, the libelant could have recovered the estimated cost of towing and gas freeing as well as estimated detention. But I take it that the rule of estimated cost of repairs in cases where no repairs are actually made is not an inflexible one. Cf. Brooklyn Eastern Dist. Terminal v. United States, 287 U.S. 170, 53 S.Ct. 103, 77 L. Ed. 240. What is allowed in cases of no repairs is the depreciation in value. In many instances the measure of depreciation is what it would have cost to make the repairs, on the theory that a prospective purchaser of the vessel would presumably calculate his price by deducting what he would have to spend in the future to repair the vessel. So we have the general rule relied on by the libelant as an analogy. In a case where the collision injuries were as light as here, however, the imaginary reasonable purchaser would not be presumed to substract incidentals like estimated towage and gas freeing or estimated detention. He would count on working in the repair at some future time when the vessel was being repaired for other and more pressing damage or defect, thus avoiding double loss for the incidental items. The libelant's argument for the "no repair" cases, while plausible, cannot be accepted.

The commissioner was right in disallowing towage, gas freeing, and detention. The report will be confirmed.

