**GULF OIL CORPORATION, as Owner Pro Hac Vice of the Steamship GULFSPRAY, Plaintiff,**

v.

**PANAMA CANAL COMPANY, Defendant.**

**Civ. No. 6135.**

District Court, Canal Zone, Balboa Division.

Dec. 29, 1971.

Burlingham, Underwood, Wright, White & Lord, by Joseph C. Smith, New York City, and DeCastro & Robles, by David de C. Robles, Balboa, Canal Zone, for plaintiff.

Dwight A. McKabney and John L. Haines, Jr., Balboa Heights, Canal Zone, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CROWE, District Judge.

### STATEMENT

On April 2, 1966, plaintiff's vessel, the SS GULFSPRAY, sustained rudder damage when she grounded in the Panama Canal while under the control of defendant's pilot. The question of liability for the accident having been resolved against the Canal Company, 311 F.Supp. 1307 (D.C.Z.1970), aff'd 437 F.2d 111 (5th Cir. 1971), the case came on for trial on the question of the quantum of damages to which Gulf is entitled.

### FINDINGS OF FACT

1. The total amount of Gulf's claim is $143,876.83. The claim is comprised of 23 separate items and includes a demand for prejudgment interest at the rate of 6% from June 23, 1966 to the date of trial, October 7, 1971.

2. Gulf submitted its claim to the Canal Company in October 1969. The Canal Company thereafter analyzed the various items thereof against the provisions of section 293 of Title 2, Canal Zone Code, 76A Stat. 23, the statute prescribing the types of damage which the Canal Company may and may not pay on account of vessel accidents occurring in Canal Zone waters.

3. The analysis of Gulf's claim by the Canal Company resulted in the latter's determination that all or part of 15 items were not allowable under its interpretation of the statute.

4. Section 293 was enacted in 1962. From 1951 until that time, substantially identical provisions governing the measure of damage assessable against the Canal Company in vessel accident cases occurring in Canal Zone waters were contained in section 10(c) of Title 2 of the 1934 Canal Zone Code. Prior to that time, the matter was governed by a series of Presidential executive orders, the first of which was issued in 1923. The text of all of these executive orders was substantially the same as the text of the

present statute. This text was drafted in 1918 by the Governor of The Panama Canal, who was at that time authorized by the President to issue rules governing the subject. It has thus continued in the law, in substantially identical terms, for 53 years.

5. Since its creation in 1951, the Canal Company has been the agency of the Government charged with the administration of the statute (first section 10(c) and, subsequently, section 293, Title 2, Canal Zone Code) governing the measure of damages payable against it.

6. During the twenty years that it has administered the statute, the Canal Company has uniformly interpreted it as providing the exclusive measures of the damages payable by it for vessel accidents occurring in Canal Zone waters, and as excluding certain, well-defined categories of claimed damage.

7. The noncorporate entity, The Panama Canal, which ran the waterway until the creation of the Canal Company in 1951, also considered the various executive orders and the Gubernatorial order of 1918 which preceded them, as providing the exclusive measure of damages payable by it in these cases and as excluding the same well-defined categories of claimed damage.

8. The determination by the Canal Company that the disputed items of Gulf's claim were not payable under section 293, was consistent with the construction which has been given to the present statute and its substantially identical predecessor by the Company during the twenty years of its existence. The disallowances were also consistent with the construction given to the Gubernatorial order of 1918 and subsequent Presidential orders by The Panama Canal, the agency which adjusted such claims until the Company's creation in 1951. Although claims for items of damage similar to the ones in dispute here have, in the past, been presented to the Canal Company and The Panama Canal, such items have never been paid by either agency.

9. The interpretation given to the statute by the Canal Company has never before been questioned in litigation. Until this case, all vessel-accident claimants of the Company have accepted the latter's interpretation of the statute as providing the exclusive measure of damages payable by it and as excluding the same types of damage here in dispute. The same is true with respect to claims submitted prior to 1951 to The Panama Canal.

10. GULFSPRAY returned to Balboa on April 3, 1966 for the purpose of making an under water inspection of the vessel to determine the extent of damages sustained by the vessel as the result of striking the bank of the Panama Canal bank on April 2, 1966. At the time she left the Canal Zone waters early in the morning of April 3, she was bound for Yokahama with a full cargo of jet fuel.

11. After determining that the rudder was damaged GULFSPRAY deviated from her voyage and proceeded to San Pedro, California to make repairs to her steering gear damaged by the contact with the Canal bank.

12. It was necessary for GULFSPRAY to discharge her cargo at the Navy depot, San Pedro, prior to proceeding to the repair yard, the repair yard floating dry dock being unable to lift GULFSPRAY while loaded.

13. It was stipulated between the plaintiff and defendant that all expenses claimed were incurred and paid for by plaintiff and the Court so finds.

14. The plaintiff and defendant stipulated and the Court finds that the following items were a result of the GULFSPRAY striking the bank:

| | |
|---|---|
| Todd Shipyard Corporation | |
| Repairs to steering gear | $50,409.00 |
| Alabama Drydock & Shipbuilding Company | |
| Repair rudder stock | 7,500.00 |
| American Bureau of Shipping | 137.00 |
| Gulf Oil Corporation | |
| Load spare rudder stock on truck | 193.50 |
| A. Moe Company, Inc. | |
| Secure rudder stock on truck | 203.00 |

| | |
|---|---:|
| Atlas Truck Rental<br>    Truck rental to transport rudder<br>    stock from Philadelphia to San<br>    Pedro, California | 2,733.50 |
| L. A. Harbor Department<br>    Pilotage services rendered GULF-<br>    SPRAY entering and leaving San<br>    Pedro | 544.50 |
| Wilmington Transport Corporation<br>    Tug assistance from sea buoy<br>    to discharging berth/shipyard/<br>    loading berth/sailing | 2,377.75 |
| American Bureau of Shipping<br>    Classification survey and cer-<br>    tificate of seaworthiness | 800.00 |
| | $64,898.25 |

15. Plaintiff claims $19,119.42 for the maintenance of the vessel and wages of crew during the detention of the vessel. Defendant concedes that $8,069.08 is allowable against it while the vessel was making repairs in San Pedro. The Court finds that all of the maintenance expenses of the vessel and wages of the crew are actual additional expenses incurred by plaintiff and are in excess of the bareboat charter hire.

16. The evidence shows that the following expenses were incurred necessarily and by reason of the vessel striking the bank in the Canal:

| | |
|---|---:|
| Panama Canal Company<br>    Tug SAN PABLO<br>    Tug assistance to damaged<br>    GULFSPRAY | $ 90.00 |
| Panama Canal<br>    Tugs, pilotage and launch hire<br>    required as a result of the ves-<br>    sel's return to the Canal Zone<br>    for an under water inspection | $ 1,436.00 |
| Panama Canal Company<br>    Diver equipment to examine<br>    rudder and appurtenances | 353.82 |
| Panama Canal Company wharfage | 193.50 |
| Gulf Oil Corporation<br>    Expenses of truck drivers trans-<br>    porting rudder stock from Phila-<br>    delphia to San Pedro and return<br>    to Philadelphia | 907.07 |
| Toplis and Harding, Inc.<br>    Survey fee | 702.60 |
| Gulf Oil Corporation<br>    Expenses of plaintiff's port en-<br>    gineer attending and supervising<br>    repairs | 544.02 |
| Gulf Oil Corporation | 68.61 |
| | $ 4,295.62 |

17. The GULFSPRAY was detained eleven days for the purpose of repairing the vessel, including the steaming time, surveys, inspections, discharging and reloading of the vessel. Plaintiff paid $1,899.00 per day charter hire, a total of $20,412.37 for the repair period.

18. The evidence shows that the following expenses that were incurred and for which claim is made were precluded by the criteria established by the Claims Branch of the Panama Canal Company and are not within the statute 2 C.Z.C. 293:

| | |
|---|---:|
| Boyd Brothers<br>    Radio, telegraph and telephone | $ 182.24 |
| Howard Hartry, Inc.<br>    Fees and services entering and<br>    clearing vessel | 35.00 |
| Marine Exchange | 9.00 |
| Petroleum Specialist Corporation | 11.35 |
| | $ 237.59 |

19. Plaintiff's total expenses incurred necessarily and by reason of the accident are $108,725.66.

20. The interpretation of 2 C.Z.C. 293 by the Claims Branch of the Panama Canal Company is entitled to great weight and not to be overruled without cogent reasons and unless the decisions that have been followed by the Claims Branch are violative of the equities and the desire of Congress to see that persons who are damaged by the actions of the Panama Canal Company are properly compensated.

The witnesses for the defendant quoted entirely from memory relative to the criteria that has been established throughout the years in settling claims of the nature herein, and no manual or well defined rules for the interpretation of the statute were ever presented. The witnesses took refuge in the fact that it had just never been done any other way and that they had learned the method of settlement from their predecessors.

### CONCLUSIONS OF LAW

1. In determining the meaning of an ambiguous statute, great weight is to be afforded the construction

given to it by those charged with its administration. This is especially true where, as here, an agency of the Government is the source of the construction, the construction has continued over a long period of time and has received wide acceptation, and was first given at or near the time of the statute's enactment. Even more weight is to be afforded such a contemporaneous construction where, as here, the agency suggested the language of the statute in question to Congress, and where Congress reenacted that statute in substantially unchanged terms. In such a case, the agency's construction is virtually controlling of the statute's meaning and should not be overturned, except for weighty reasons.

2. The decisions in several instances were arbitrary and based upon interpretations of the statute that were in vogue when the local organization was not a corporation and the Panama Canal Company complex was in a position to be quite arbitrary because of its isolation and the limited opportunity for redress on the part of claimants. The interpretation of the statute is therefore open for an equitable approach and should be studied with a view toward attaining justice for a damaged litigant and in harmony with the rest of the Code which did not become effective until 1962. For this reason, 11 of the 15 claims rejected by defendant were allowed.

3. Section 293 contains the exclusive measure of damages payable by the Panama Canal Company for injuries sustained by vessels in Canal Zone waters which are caused by the fault or neglect of the Company, its officers or employees.

4. Items of claimed damage not falling into one of the categories of allowable damage contained in section 293, and items specifically precluded from payment by the section, are not payable by the Canal Company.

5. The following types of damage are among those not allowed under section 293 and, thus, are not payable by the Canal Company:

(a) Expenses incurred for telephone and telegraph communication where the communication was not necessary to notify the shipowner of the accident, discuss repair instructions, advise of the estimated delay or notify the owners of completion of repairs and departure;

(b) Expenses incurred for port charges, such as for entering, clearing and reporting the entry of the vessel.

6. There being no dispute as to the items of damages set forth in finding of fact number 14, the judgment to be entered herein shall include the sum of $64,898.25.

7. Plaintiff's expenses in the amount of $19,119.42 for the maintenance of the vessel and wages of the crew, being actual additional expenses in excess of the bareboat charter hire, are proper items of damage chargeable to defendant under 2 C.Z.C. § 293(3). The sum of $19,119.42 is therefore allowed against defendant.

8. The expenses set forth in finding of fact number 16 are fully supported by the evidence and were "definitely and accurately shown to have been incurred necessarily and by reason of the accident or injuries", 2 C.Z.C. § 293(4). The sum of expenses, $4,295.62, is allowed against defendant.

9. The General Maritime Law provides that a vessel owner may recover charter hire for the period of the vessel's detention as a result of the negligence of another. The Conqueror, 1886, 166 U.S. 110, 125, 17 S.Ct. 510, 41 L.Ed. 937; Brooklyn Eastern Dist. Terminal v. United States, 1932, 287 U.S. 170, 175, 53 S.Ct. 103, 77 L.Ed. 240. The Canal Zone Code, Title 2, § 293 is a codification of the General Maritime Law with respect to the measure of damages "generally" in determining the amount of the award of damages for injuries to a vessel for which the Panama Canal Company is liable. It provides specifically for the payment of charter hire actually lost by the owners, or charter hire actually paid, depending upon the terms of the charter party, for the time the vessel is undergoing repairs. Only agent's fees, or commissions, or other incidental

expenses of similar nature or any items which are indefinite, indeterminable, speculative or conjectural may not be allowed under the statute. Plaintiff's claim for charter hire does not fall within those categories. Plaintiff is therefore allowed the charter hire for the time the vessel was detained as a result of the accident, in compliance with 2 C.Z.C. 293(2), (4) in the amount of $20,412.37.

10. The expenses set forth in finding of fact number 18, held to be excluded by the criteria established by the Panama Canal Company, are the claims for Boyd Brothers, radio, telegraph and telephone, in the sum of $182.24, and Petroleum Specialist Corporation, in the sum of $11.35, said claims not being established as necessary to: (1) notify shipowner of the accident, (2) discuss repair instructions, (3) advise of the estimated delay, or (4) notify the owners of the completion of repairs and departure. The claims for Howard Hartry, Inc., in the sum of $35.00, and the Marine Exchange, in the sum of $9.-00, are held to be excluded as falling within the second unnumbered paragraph of § 293 which excludes agent's fees, or commissions, or other incidental expenses of similar character, and fall within the consistent practice of the Company's exclusion of such items.

■ 11. Under the General Maritime Law, interest is recoverable. The Baltimore, 75 U.S. (8 Wall) 377, 385, 19 L.Ed. 463 (1869); The President Madison, 91 F.2d 835 (9 Cir. 1937).

■ There is no logical reason why a corporation that belongs to the Government should be exempt from paying interest. If such a corporation's Claim Branch knows that delay brooks no penalty, it may "drag its feet", and in some cases it appears this has happened. It seems only just that interest shall be classified in (4) of Section 293 as one of the "other expenses" if it can be shown that it was definitely and accurately incurred necessarily by reason of the accident or injuries.

■ The 1962 Code contemplates the payment of interest to a person who is entitled to recover damages in 4 C.Z.C. § 4651. This section is an exact enactment of Title 3 § 2631 of the 1934 Code. It has therefore been in common usage and it has been customary to pay interest on damages in the Canal Zone for many years except in cases such as the one at bar, and even though this has been the practice such nonpayment is arbitrary and unjust. This section must be read in conjunction with Section 293 and it appears, therefore, that before interest can be allowed in such a case it must be definitely and accurately proven to be an expense incurred necessarily and by reason of the accident.

In this case, however, the plaintiff is asking only that the Court compute the interest at the legal rate from the date of the damage and there is no definite and accurate showing that it was an expense necessarily incurred. It might be generally said, as a matter of business practicalities, that failure to have the use of corporate funds by reason of someone else's act should carry with it the right to recover interest, for theoretically the wise corporation would keep its funds working and thus realize interest or profits. Quite the contrary may be true, however, as tax problems and the intricate financing in which a large corporation like the plaintiff engages may produce another result. As a matter of fact, the loss may have been written off and a tax saving effected so that the allowance of the legal rate would be in excess of the loss or expense incurred, if any. It may have also been covered by insurance or a funding plan that would prevent plaintiff from having to pay interest.

■ The ability to recover interest under (4) section 293 is therefore not precluded by this decision, but as there is no showing that interest was an expense which was definitely and accurately shown to have been incurred it will not be allowed until after the entry of judgment.

12. Judgment is entered in behalf of plaintiff, Gulf Oil Corporation, against the defendant, Panama Canal Company, in the amount of $108,725.66 with interest at six percent from the date of entry of judgment herein together with costs incurred on behalf of the plaintiff in this action.