INLAND OIL & TRANSPORT CORPORATION, Plaintiff,

v.

ASHLAND OIL, INC. and Louisville Refining Company, Defendants.

Civ. A. No. C 80–0344 L(A).

United States District Court, W.D. Kentucky, Louisville Division.

Nov. 10, 1982.

James G. Apple, Stites, McElwain & Fowler, Louisville, Ky., for plaintiff.

W. Scott Miller, Jr., Miller & Miller, Louisville, Ky., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ALLEN, Chief Judge.

This case is submitted to the Court for decision following a non-jury trial. Plaintiff seeks damages in the total amount of $67,765.58, plus prejudgment and post-judgment interest. Its claim is that its Barge IOT 158 was damaged because of the defendants' negligence in loading the cargo of petroleum products on February 6, 1980 while the barge was in the sole custody and control of the defendants at its terminal facilities on the Ohio River in the lower Louisville Harbor.

Barge IOT 158 was built in 1967 and before 1975 had ten covered compartments arranged in pairs for carrying petroleum products. In 1975, it was altered by adding two additional covered compartments bringing the total number to twelve, and the total length to 296.7 feet. Following its alteration, it was inspected and approved by the Coast Guard, and since 1975 has been used regularly for the transportation of petroleum products and without incident prior to which events lead to this lawsuit.

Barge IOT 158 arrived in Louisville at the Gulf Terminal on February 4, 1980 and was unloaded at that terminal by George Horsley, a licensed tankerman employed by Inland and by Jimmy Scott, Jr., a tankerman employed by Apex Towing Company. No defects were noticed by Scott or Horsley as to the barge on February 4, 1980, and the Coast Guard representative inspected the barge on February 5, 1980 finding no structural defects in it.

On February 4, 1980, Gulf sent a telex message to Inland Oil instructing it to load compartments 1 and 2 with kerosene and 3 to 10 with No. 2 fuel oil. No instructions were given as to compartments 11 and 12, and no copy of the instructions was sent to plaintiff. Barge IOT 158 was delivered to defendant Louisville Refining Company in an empty condition on February 6, 1980. No defects were noticed in the barge at that time.

The loading of the barge by the defendant companies began at 10:45 a.m. February 6th and was accomplished by placing No. 2 fuel oil into compartments 3 through 10 and Kerosene into compartments 1 and 2. Compartments 11 and 12 were left empty.

After the loading was completed on February 6, 1980, Horsley discovered a large bulge in the number 5 compartment of the barge. He informed Captain Conner of the M/V Lady Linda. Also tankerman Scott noticed the bulge when the barge was inspected in daylight. During the next day an additional bulge was discovered in other compartments of Barge IOT 158.

The barge was then taken to the Greenville Shipping Corporation and repaired at a total cost of $17,501.50.

Plaintiff contends that the damages to the barge were caused by an incorrect method of loading the barge, and that the barge was improperly balanced, in that the end tanks were left empty. The defendants, on the other hand, contend that the barge, because of its alteration contained inherent structural weaknesses and was misaligned. Defendants also contend that if the loading were the cause of the buckling, the damage would have been concentrated in the center of the barge. However most of the damage occurred just aft of the point at which the new compartments joined the balance of the barge.

Defendants also contend that even if they are responsible for the damages, that their responsibility is, at most, a partial one, since they contend that the damage was at least partially caused by plaintiff's negligence.

The Court finds that the damage to the barge and its buckling occurred as a result of the improper loading of the barge. There is no proof showing that the barge was in any way defective, other than the expert opinion of the defendants' witness, and even he had to concede that the loading of the barge was improper. *Coast Guard Manual for the Safe Handling of Flammable and Combustible Liquids and Other Hazardous Products* published in September, 1976 contains the statement that loading procedures which are confined to the center of a barge allowing its ends to remain empty are improper and will create stress for the barge. It is apparent that defendants failed to exercise ordinary care in the loading of the barge.

Two cases which are somewhat analogous to the case at bar, and which have both found negligent loading by concentrating too much of the load in the midsection of a barge in relation to the loads on either end are *Continental National American Group v. Valley Line Company,* 420 F.Supp. 568, 570 (E.D.Mo.1976) and *Marine Sales & Service, Inc. v. Greer Steel Company,* 312 F.Supp. 718, 722 (N.D.W.Va.1970).

The Court finds no negligence upon the part of the plaintiff and therefore the cases cited by the defendants are not applicable and there is no occasion to apportion damages. There is, however, a substantial question as to some of the damages claimed by the plaintiff. Plaintiff originally claimed $25,258.89 as expenses incurred in repairing the barge at the Greenville Shipping Corporation. However, it conceded at trial that there were three billings of $3,553.12, $2,339.48 and $1,864.79 which were items not connected with the damages caused by the bulge. Plaintiff is, therefore, entitled to recover $17,501.50 upon this portion of its claim.

Plaintiff also claims $23,200 for the loss of the use of the barge from February 6, 1980 to April 20, 1980. The testimony shows that plaintiff is a subsidiary of various other companies and does not own barges itself but charters approximately 50 barges. These barges are chartered verbally on a month-to-month bareboat basis. No attempt was made by the plaintiff to charter another barge to replace IOT 158. No proof was presented of any cargo which IOT 158 had to refuse during the period that the barge was in the shipyard. The actual annual charter rate of the barge was $15,408.

Plaintiff introduced evidence to the effect that a barge such as IOT 158 could be rented for $400 per day. It also presented

evidence to the effect that business was good during the period that the barge was in drydock. It argues that it should receive damages of $400 per day for the entire period between the date of loss and the date when the barge was again fit for service, to wit: February 6, 1980 to April 20, 1980.

Plaintiff contends that it is entitled to the loss of use of the barge under authorities such as *Hewlett v. Barge Bertie,* 418 F.2d 654 (4th Cir.1969); *Marine Sales & Service, Inc. v. Greer Steel Company, supra; Aiple Towing Company, Inc. v. M/V Tri-W,* 396 F.Supp. 943 (E.D.La.1975); and *Ingram Corporation v. Ohio River Company,* 505 F.2d 1364 (6th Cir.1974).

In *Ingram, supra,* it was shown that the barge which was damaged was one of four built by appellee to transport fuel products for Texaco. In the months preceding the collision, it averaged 3.5 trips per month between Mt. Vernon, Indiana and Cincinnati, Ohio. It was estimated that it produced income of $3,122.58 per trip. There was also evidence to the effect that the M/V Broadfoot, which was owned by Ingram during the time the barge was under repair, made three trips, two with its three remaining fuel barges and one on which it chartered an extra barge. Its operating expenses remained the same regardless of whether it operated three or four barges.

The court also noted that there was never an occasion when Texaco did not have sufficient fuel to fill a full tow, and that it was clear that it had such a supply while the barge was under repair. The court upheld the award of the district court of $8,052 which was less than the proof showed of actual loss of income of $3,122.58 on each of the first two trips and $2,582.04 on the trip for which a barge was rented.

Defendants, on the other hand, contend that *Ingram, supra,* is not applicable to the case at bar and that the Court should apply the principles set out in *Skou v. United States,* 478 F.2d 343 (5th Cir.1973) to the effect that where there is no evidence that a specific charter has been lost and no proof of damages other than the fact that the barge was out of service, plaintiff is not entitled to recover for loss of use.

A very thorough discussion of the problem of damages for loss of use is contained in *Slater v. Texaco, Inc.,* 506 F.Supp. 1099 (D.Del.1981). In that case, Chief Judge Latchum points out that the burden of proof is on the shipowner to show to a reasonable certainty the extent to which his vessel was thrown out of employment and the fair earnings that it would have made, see p. 1113. As he further points out, "failure by the plaintiff to adduce sufficient credible evidence showing that the vessel probably would have been employed and the probable extent of that employment will defeat a claim for damages for detention." The same is true if plaintiff fails to introduce credible evidence regarding the operating revenues and expenses of the damaged craft.

In the case at bar, the plaintiff contended that it received income of $4.63 per short ton for transporting the cargo which IOT 158 carried from the Inland Oil dock to the Gulf dock. No proof was offered by plaintiff as to the amount of expenses which would be incurred in such a trip. Plaintiff did produce evidence that the barge would probably have been in service at least once every three weeks but did not show the actual net income which would have earned had it been in service during the time it was in drydock. In this connection, it is noted for example that Chief Judge Latchum in *Slater, supra,* had before him evidence from which he concluded that the vessel which was being repaired would have worked 71.1% of the time that it was under repair.

In the case of *Brooklyn Eastern District Terminal v. United States,* 287 U.S. 170, 53 S.Ct. 103, 77 L.Ed. 240 (1932), it was held that a plaintiff could not recover demurrage where its tug had been damaged and where it did not hire another tug but did the same business as it did before with the two other tugs it had in its service.

Here, in light of Mr. Watkins' testimony that the plaintiff did not attempt to charter another barge and did not lose any contracts to haul any cargo because of the

repairs to the barge, the Court believes that the principles set out in *Brooklyn Eastern District Terminal v. United States, supra,* should prevail and that plaintiff be denied damages for demurrage of the barge.

■ With respect to plaintiff's claim for down time, there was evidence that the two was delayed 27.67 hours because of the accident and that it would have yielded income in the amount of $200 per hour. There being no testimony to the contrary and no objections raised by the defendant in its brief, we award the plaintiff the sum of $5,534 for the loss of down time.

■ Coming next to the question of administrative overhead and operating expenses of $4,783.80, which were related to the casualty which occurred to the barge, we hold that plaintiff is entitled to recover such expenses under the principles set out in *United States v. Denver and Rio Grande Western Railroad Company,* 547 F.2d 1101 (10th Cir.1977), a tort case, and in *Freeport Sulphur Co. v. S/S Hermosa,* 526 F.2d 300 (5th Cir.1976), an admiralty case, where the court held that overhead expenses attributable to the cost of internal repairs made by the plaintiff were recoverable.

In *United States v. Denver and Rio Grande, supra,* the court stated as follows:

Under some circumstances reasonable overhead expenses may be recovered in a tort action when repairs have been made to damaged property by the plaintiff. When recoverable, the amount awarded for overhead expenses must be shown as reasonably paid or incurred as part of the cost of repairs required as a result of the tort-feasor's negligence.

■ Finally, as to prejudgment interest, it has been held that interest should be awarded in admiralty cases such as the one at bar in the absence of unusual, exceptional or peculiar circumstances. See *Mid-America Transportation Company, Inc. v. Rose Barge Line, Inc.,* 477 F.2d 914, 916 (8th Cir.1973). The exceptional or peculiar circumstances which justify the denial of interest include delays in bringing or prosecuting the suit by the injured parties. See *American Zinc Company v. Foster,* 441 F.2d 1100 (5th Cir.), cert. denied, 404 U.S. 855, 92 S.Ct. 99, 30 L.Ed.2d 95 (1971). The prompt assertion of a good faith defense is not a relevant factor. See *Mid-America v. Rose, supra.*

■ In the instant case, since the delay in bringing suit was only five months, plaintiff is clearly entitled to prejudgment interest. Plaintiff asserts that it should recover interest at the rate of 12% per annum, but the better reasoned authority is that unless plaintiff introduces specific evidence as to its cost of borrowing money, the Court should resort to the rate of interest which is legal in the forum in which the case is tried. See *Slater v. Texaco, Inc., supra,* at p. 1116. Likewise, the better reasoned authority is to the effect that the interest should run from the date when repairs were completed rather than the date of loss. See *Slater v. Texaco, Inc., supra,* at p. 1117. We, therefore, hold that plaintiff is entitled to recover prejudgment interest from April 20, 1980 to the date of entry of judgment at the rate of 8%, which amounts to $5,688.49.

A judgment in accordance with this opinion will be entered this date.

## JUDGMENT

This action, having been tried before the Court without a jury, and the Court, being fully advised in the premises and having filed its findings of fact and conclusions of law,

IT IS ORDERED AND ADJUDGED that the plaintiff, Inland Oil & Transport Corporation, recover from defendants Ashland Oil, Inc. and Louisville Refining Company the sum of $33,507.79, plus interest at the rate of 8% per annum from the date of judgment until paid.

IT IS FURTHER ORDERED AND ADJUDGED that plaintiff recover its taxable costs herein expended.

This is a final and appealable judgment and there is no just cause for delay.