# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3405

_____

United States of America,

          Appellee,

   v.

Capital Sand Co., Inc., in personam;
M/V Jamie Leigh, its engines,
apparel, tackle, and appurtenances,
in rem,

          Appellants.

\*

Appeal from the United States
District Court for the
Eastern District of Missouri.

[PUBLISHED]

_____

Submitted: May 19, 2006
Filed: October 25, 2006

_____

Before BYE, HANSEN, and SMITH, Circuit Judges.

_____

HANSEN, Circuit Judge.

The United States brought suit in admiralty against Capital Sand Co., Inc. and the M/V Jamie Leigh to recover the cost of repairs to a lock and gate on the Mississippi River that were damaged after an allision with a barge towed by the M/V

Jamie Leigh. See 33 U.S.C. § 408. The district court[1] awarded damages to the United States, and the appellants appeal, disputing only the amount of damages awarded to the Army Corps of Engineers (Corps) for overhead expenses. After careful review, we affirm.

## I.

On April 8, 2000, a barge being towed by the M/V Jamie Leigh struck and damaged miter gate number two of Mississippi River Lock 25, located near Winfield, Missouri. The Corps is responsible for maintaining and operating Lock 25. After the allision with the M/V Jamie Leigh, the Corps assessed the damage to miter gate number two and determined that repairs were needed.

The process of repairing a miter gate is extensive and requires that the damaged gate be pulled from the lock, that a temporary replacement be installed, and that the original gate be repaired and then reinstalled. The Corps determined that it would do the necessary repair work itself and that it would undertake repairs to miter gate one at the same time that miter gate two was being repaired; miter gate one had been damaged in an allision in 1999 but did not require immediate repair at that time.

Repairs were completed to both miter gates on February 9, 2002, and the Corps then apportioned the costs to pull and repair the gates between the two allisions. The initial estimate for the cost of repairs related to the M/V Jamie Leigh allision was between $350,000 and $600,000. The Government determined that the actual share of the damages owed by Capital Sand as the owner of the M/V Jamie Leigh was $303,511.53, and a bill was sent for that amount. Capital Sand did not make any payments to the Government, and the Government filed suit in the Southern District of Illinois. The case was later transferred to the Eastern District of Missouri upon the

---

[1]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

-2-

defendants' motion. After the transfer, the Government recalculated the amount of damages to conform to the rule of <u>Hershey</u>[2] and reduced its claim to $280,545.06. This amount included charges for labor (including overhead), plant rental, travel, general overhead, supplies, and other various expenses.

The district court held that Capital Sand was liable for the full amount of damages claimed by the Government. The court also awarded the Government prejudgment interest of 2.25 percent per annum and assessed a penalty of $1,000 against Capital Sand pursuant to 33 U.S.C. § 411. Capital Sand and the M/V Jamie Leigh filed this timely appeal, challenging only the district court's award of $98,814.69 in overhead expenses as part of the total damage award.

II.

"In an admiralty case, the findings of fact of a district court, sitting without a jury, may not be set aside unless clearly erroneous." <u>United States v. M/V Gopher State</u>, 614 F.2d 1186, 1187 (8th Cir. 1980) (<u>Gopher State</u>). Only factual findings that are unsupported by substantial evidence, that are "based on an erroneous conception of the applicable law," or that upon review of the evidence leave the court "with the definite and firm conviction that a mistake has been committed" will be found to be clearly erroneous. <u>Id.</u> (internal marks omitted).

Damage to a lock or gate "results in liability without fault under the Rivers and Harbors Act of 1899." <u>Id.</u>; <u>see</u> <u>also</u> 33 U.S.C. § 408. Admiralty cases require the Corps to prove that the amount claimed as damages, including overhead "is a fair and reasonable charge for the repairs" and "necessary to complete the job." <u>Gopher State</u>,

---

[2]<u>United States v. Am. Commercial Barge & Line Co.</u>, No. 88-1793-C-7, slip op. at 19 (E.D. Mo. Sept. 30, 1991) (J. Hamilton) (requiring that damage award be apportioned according to the actual repairs needed and caused by the allision, not including damages from other sources or normal wear and tear of facility), <u>aff'd in part on other grounds</u>, 988 F.2d 860 (8th Cir. 1993).

614 F.2d at 1188. The district court has the discretion to grant or withhold damages, resting its decision "upon principles of equity and justice." United States v. Peavy Barge Line, 748 F.2d 395, 399 (7th Cir. 1984) (citing United States v. M/V Gopher State, 472 F. Supp. 556, 559 (E.D. Mo. 1979)).

The district court's findings of fact included a breakdown of the "Final Bill" which reflected actual costs of "$189,344.00 for labor; $4,653.17 for travel, $117.60 for copying and other expenses, $1,368.75 for various contracted services, $3,200.00 for contracted dive services, $5,321.07 for supplies and materials, and $99,506.94 in equipment costs ('plant rental')."[3] (Appellants' Add. at 6.) The labor cost included charges for General and Administrative overhead (G&A) of $22,702.93 and charges for Indirect Cost overhead of $76,111.76, for a total overhead charge of $98,814.69. (Id. at 10.) Capital Sand argues that the award of overhead was error as a matter of law under Gopher State.

By definition, "overhead expenses . . . cannot be easily identified with any individual product or repair." Peavey Barge Line, 748 F.2d at 399 (citing United Elec., Radio & Mach. Workers v. Oliver Corp., 205 F.2d 376, 387 (8th Cir. 1953)). The purpose of overhead is to allow a company to recover "its general operating expenses, which are not directly allocable to a particular project." Id. This recovery is allowable as part of the cost of repairs even if the party suffering an injury decides to make the necessary repairs itself, as any company hired to do the repairs would have included overhead charges in its bill to the injured party. See id. "Increased overhead and indirect expenses are compensable, but only where there exists justification for awarding these costs." Gopher State, 614 F.2d at 1189.

---

[3]All references to a breakdown of the repair costs refer to the original bill prepared by the Corps for $303,511.53. While that amount was reduced in the aggregate upon transfer to the Eastern District of Missouri, the district court relied on the original bill when deciding the issue of damages and then reduced in aggregate the total award to $280,545.06, in addition to prejudgment interest and the $1,000 penalty.

The Corps has an obligation to recover its overhead costs, which arises directly from an Act of Congress codified at 33 U.S.C. § 576. That statute establishes a revolving fund for necessary expenses related to the maintenance and repair of facilities and equipment used in the Corps' civil works functions (which include the repair and operation of the locks and dams on the Mississippi River), specifically including the furnishing of facilities and services for private persons as authorized by law. The statute further requires the fund to "be credited with reimbursements . . . for the cost of equipment, facilities, and services furnished, at rates which shall include charges for overhead and related expenses . . . and accrued leave . . . ." 33 U.S.C. § 576. The Corps has implemented the statute's requirements by regulation. In this case, the Corps used its own equipment, its shops and facilities, and the services of its employees to repair the damage caused by the appellants.

The appellants rely on <u>Gopher State</u> to contest the $98,814.69 in overhead damages awarded to the Government. In <u>Gopher State</u>, our court upheld the district court's judgment denying the award of additional overhead charges to the Government, holding "that the government failed to prove the reasonableness of the amount claimed above its original estimate for the repairs," particularly regarding the increased overhead charges. <u>Id.</u> at 1187-88. The district court had found that the method used to calculate overhead, which resulted in overhead on overhead, basically amounted to double recovery for the Government, a finding our court found to be not clearly erroneous. <u>Id.</u> at 1189. In addition, our court noted the district court's concern with the fact that the actual bill for overhead was 544% greater than the original estimated cost for overhead. <u>Id.</u> at 1182. In the case at bar the amount sought, $280,545.06, is somewhat less than the low end of the original estimate range of $350,000 to $600,000, thus eliminating the problem of an increase that was "ridiculous on its face" present in <u>Gopher State</u>. <u>Id.</u> at 1188.

In <u>Gopher State</u>, the original estimate for the work included overhead of $8,000. The government submitted a final invoice that included overhead of $53,000. The

district court disallowed the additional overhead because it was arbitrary and a result of overhead on overhead. The issue was whether the additional overhead was justifiable. There was no question that overhead was allowable as long as it was justified. The court's discussion about overhead not being related to the accident and not being specifically related to the Gopher State job, id., is a recitation of the testimony before the district court. Our court held in Gopher State, as stated supra, that "[i]ncreased overhead and indirect expenses are compensable, but only where there exists justification for awarding these costs." Id. Under the appellants' interpretation of Gopher State, overhead is only recoverable if it is directly linked to a particular repair project. We do not read the Gopher State case to be as limiting as the appellants argue. To do so ignores the definition of overhead, which requires only an indirect connection by definition, and ignores the outcome of Gopher State, which allowed the recovery of justified overhead. We hold that the Corps need not establish a direct connection between overhead charges and a particular repair project, but may recover overhead charges that are justified by a reasonable relationship to the repair work. See Peavy Barge Line, 748 F.2d at 399-400; Gopher State, 614 F.2d at 1189; Am. Commercial Barge & Line Co., No. 88-1793-C-7, slip op. at 19.

In this case, G&A overhead includes costs for the personnel involved in helping effectuate the repairs, such as labor costs for the processing travel vouchers for travel to the repair site and the labor costs of the procurement specialists who place orders for needed repair parts and supplies–separate from the actual cost of the purchased items. G&A overhead covers the work of "the administrative divisions – Finance, Contracting, Command, Resource Management, Personnel, Security and Safety" (Appellee's Br. at 9), all of which played a role in enabling the repair process to happen, yet none having costs easily or directly attributable to this specific project or repair. Anytime a steel beam was ordered or a paycheck was issued for a person working on the repair project, these administrative departments were involved and thus incurred costs related to the repair process. The same is true of Indirect Cost overhead charges. These charges, while again not easily attributable to any one repair

order or broken down by project, are related to the repair process in that they include items such as electricity for the buildings and equipment actually used to make the repairs, the salary of supervisors who oversee a multitude of projects at a time, and the cost of purchasing tools used for a variety of repairs, not just this one in particular. (See id. at 10.)  Like any private business, the Corps must incur necessary expenses just to stay in the business of maintaining the nation's waterborne shipping lanes. There was ample testimony in this case that established a relationship between the overhead charges and the repair work to justify an award of overhead.

Cases applying Gopher State support our interpretation, as courts within this circuit, relying on Gopher State's holding regarding unjustified and unreasonable damages–particularly the overhead charges–have continued to award overhead damages when they are warranted.  See Am. Commercial Barge Line, No. 88-1793-C-7, slip op. at 18-19 (finding award of overhead based on fixed percentage of 110% of labor costs was fair and reasonable as related to service base where repair work on damaged miter gate took place); Complaint of Valley Towing Serv., 629 F. Supp. 139, 146-47 (E.D. Mo. 1985) (including overhead in damage award for repairs to power plant for damage caused by being struck by barges that broke away from towboat); Shappert Eng'g Co. v. Steel City Marine Transp., Inc., 620 F. Supp. 1377, 1380 (E.D. Mo. 1985) (recognizing that overhead expenses can be recovered as part of damage award, but finding that a 33% overhead charge was not justified or reasonable where the calculation was not explained).  Other circuits also have adopted a rule that is comparable to the reasonable and justified holding seen in Gopher State.  See Peavy Barge Line, 748 F.2d at 400-01 (citing Gopher State and upholding award of overhead charges to the Corps after finding that assessed costs were reasonable); Dillingham Shipyard v. Associated Insulation Co., 649 F.2d 1322, 1326-27 (9th Cir. 1981) (recognizing that company that undertakes repairs to damaged object itself, rather than outsourcing the repairs, is entitled to recover overhead damages as part of the cost of repair); Freeport Sulphur Co. v. S/S Hermosa, 526 F.2d 300, 304 (5th Cir. 1976) (stating that "[t]he cost of repairs performed internally by the injured party, including

overhead, are recoverable in a negligence action"); Avondale Indus., Inc. v. Int'l Marine Carriers, Inc., Civ. A. No. 90-4570, 1995 WL 46327, at *3 (E.D. La. Jan. 13, 1995) (awarding overhead costs as part of damage award), aff'd, 69 F.3d 535 (1995) (unpublished); Inland Oil & Transp. Corp. v. Ashland Oil, Inc., 551 F. Supp. 856, 860 (W.D. Ky. 1982) (holding that overhead charges were recoverable in suit for cost of repairs).

Turning then to the issue of whether the amount of the overhead in this case was reasonable, we conclude that the district court did not clearly err in finding that it was. Gopher State, 614 F.2d at 1187 (standard of review). The district court held that the Government had satisfied its burden of establishing that the costs billed to Capital Sand for overhead were justified and supported by the record. Witnesses for the government included two accountants from the Corps who "testified that they personally and regularly checked overhead calculated rates to ensure that the [Corps'] Revolving Fund was properly recouping overhead costs." (Appellants' Add. at 11.) The Corps periodically made adjustments to the overhead rate to comply with Congress's express intent that the Corps recover overhead expenses, while ensuring that no more was recovered than what was necessary to recoup those expenses. An independent accountant testified for the Government and stated that the overhead charged to Capital Sand was not "layer[ed]" overhead and that the 109% of direct labor costs[4] charged as total overhead was "reasonable and consistent with the norms of industry in terms of the method used and the rates charged." (Id. at 11-12.)

The important differences between Gopher State and the case before us now are found in the facts and in the record before us on review. The record justifying the

_____

[4]One of the issues before the district court involved a challenge to the reasonableness of the labor costs. The court held that the labor charges were reasonable and that finding was not appealed. The district court also found that the overhead percentage rate applied to the direct labor costs was reasonable, which was also not challenged in this appeal.

award of overhead expenses in this case is much more defined and extensive than the record in <u>Gopher State</u>, and the problems pointed out by the district court in <u>Gopher State</u>, such as double recovery, are not present here. Our holding in <u>Gopher State</u> was simply that the district court's determination that overhead expenses were not justified or reasonable was not clearly erroneous. In this case, the Government made a substantial record before the district court regarding how the charges were calculated and to what they were applied, evidence which the district court found credible. Upon review of this record, we hold that it was not clearly erroneous for the district court to award the overhead expenses it did, and that it committed no error of law.

III.

Accordingly, we affirm the judgment of the district court.

BYE, Circuit Judge, dissenting.

I believe this case is directly controlled by our decision in <u>United States v. M/V Gopher State</u>, 614 F.2d 1186 (8th Cir. 1980), which requires reversal of the district court's decision. I therefore respectfully dissent.

Under <u>Gopher State</u>, the government cannot recover overhead expenses as an item of damages in an admiralty case unless it proves *both* that 1) the amount is reasonable, and 2) the overhead arose naturally and is factually related to the particular breach. <u>Gopher State</u>, 614 F.2d at 1189-90. In this case, the government witnesses admitted the claimed overhead expenses were not directly related to the specific repair work at issue. Specifically, with respect to the $22,702.93 of overhead referred to as "general and administrative" expenses, the government's witness testified as follows:

Q.	In other words, by definition, Miss Craig, the general and administrative expenses charged to the Jamie Leigh repair project were not factually related and were not directly incurred as a result of that incident, were they?

. . .

A.	That's correct.

. . .

Q.	Can we agree that every penny of the $22,702.93 that were (sic) charged as general and administrative overhead to the Jamie Leigh project would have been incurred by the Corps of Engineers regardless of that incident?

A.	Yes, sir.

. . .

Q.	And the expenses that the St. Louis District Corps of Engineers must incur in order to maintain its offices are encompassed in the general and administrative expenses that have been charged to the Jamie Leigh repair project even though they don't relate specifically to it; correct?

A.	Correct.

Q.	The idea is that the Corps of Engineers attempts to recoup those costs from third parties who cause damage to certain Corps property even though those costs have nothing to do directly with repairing those damages?

A.	Correct.

Trial Transcript at 25-29.

With respect to the $76,111.76 of overhead referred to as "indirect cost overhead," the government's witness testified as follows:

Q.    And by definition, isn't it true that not one penny of the $76,111.76 of the indirect costs overhead add-on that you calculated is directly attributable or factually related to the Jamie Leigh repair project?

A.    That's – that is correct.

Id. at 92-93.

Therefore, the record in this case clearly indicates the government's proof failed to satisfy the second of Gopher State's two requirements, that is, proof the overhead was factually related to the particular breach involved.

In Gopher State, just as in this case, the government sought to recover overhead calculated pursuant to a predetermined formula governed by federal regulations, without showing the overhead was directly related to the specific repair work performed. The district court rejected that approach. We affirmed, stating:

Testimony in this case revealed that a percentage of the overhead charges was applied to the miter repair job but that those charges were not specifically related to nor incurred as a result of the Gopher State job. In particular, the government failed to specify how the overhead calculated related to the costs of that job. As the district court found, "(t)he overhead charges were not based upon actual expenditures of overhead items related to the accident but were calculated under regulations promulgated by the Corps of Engineers and determined by the staff of the St. Louis District Corps of Engineers."

Gopher State, 614 F.2d at 1189 (quoting United States v. M/V Gopher State, 472 F. Supp. 556, 558 (E.D. Mo. 1979)).

The Court attempts to distinguish <u>Gopher State</u> on its facts, pointing out the overhead request in <u>Gopher State</u> was more egregious in some respects than the overhead request made in this case. While this may be true, I believe the legal holding of <u>Gopher State</u> is indistinguishable. As a matter of law, <u>Gopher State</u> establishes that any overhead calculated pursuant to the Corps's predetermined formula, with no attempt to show the overhead is directly related to the specific repair work performed, is not recoverable. If <u>Gopher State</u> is unsound, and the government ought to recoup overhead based solely on the Corps's regulatory formula, that issue should be addressed by the en banc court rather than a three-judge panel. <u>See, e.g.</u>, <u>United States v. Hutman</u>, 339 F.3d 773, 777 (8th Cir. 2003) (indicating one panel cannot overrule another).

For the reasons discussed, I respectfully dissent.

_____